MUTUAL BENEFIT LIFE INS. CO. v. CITY OF ELIZABETH.

1. Where a municipality has contracted a debt incurred in the laying out and improvement of its streets without legal authority, it is competent for the legislature to authorize it to issue bonds in payment thereof.

2. A bond given by a city containing a general obligation to pay cannot, except upon the plainest grounds of construction, be converted into a promise to pay out of a particular fund.

3. When a municipal council is authorized to issue bonds when certain facts exist, and such facts are exclusively within the knowledge of such council, it is to be inferred that the law makers intended to make such council the judge whether such condition precedent has been fulfilled, and a purchaser can rely securely on the statements to that effect contained in the bonds.

---

In debt. On special case.

This was an action of debt brought by the plaintiff, as the holder of sundry coupon bonds, against the defendant as the maker thereof, to recover the interest due thereon, that is to say:

1. Coupons due June 1st, 1879, attached to 400 "*funded assessment bonds*," Nos. 71–270, 513–712, inclusive, for $1000 each, dated December 1st, 1877, issued under the act entitled, "*An act respecting bonds of cities, towns, townships and other incorporated places*," approved April 21st, 1876. *Rev., p.* 717.

2. Coupons due April 1st, 1879, attached to 269 "*consolidated improvement bonds*," Nos. 155, 167–299, 1303–1437, 1344–1443, inclusive, for $1000 each, dated April 1st, 1875,

issued under the supplement of March 17th, 1875, to the Elizabeth city charter. *Pamph. L.* 1875, *p.* 289.

3. Coupons due April 1st, 1879, attached to 266 "*consolidated improvement bonds*," Nos. 430–595, 900–999, inclusive, for $1000 each, dated April 1st, 1875, issued under the act of March 17th, 1875, aforesaid.

4. Coupons due April 1st, 1879, attached to 5 "*consolidated improvement bonds*," Nos. 2724–2728, inclusive, for $1000 each, dated April 1st, 1876, issued under said act of March 17th, 1875.

5. Coupons due April 1st, 1879, attached to a "*consolidated improvement bond*," No. 1537, for $1000, dated April 1st, 1876, issued under said act of March 17th, 1875.

6. Coupons due May 1st, 1879, attached to 9 "*market-house bonds*," Nos. 46–50, 56–59, inclusive, for $1000 each, dated May 1st, 1866, issued under the supplement to the charter of March 15th, 1866. *Pamph. L.* 1866, *p.* 421, § 1.

7. Coupons due April 1st, 1879, attached to 4 "*funded debt bonds*," Nos. 17–20, inclusive, for $1000 each, dated April 1st, 1873, issued under the supplement to the charter of March 17th, 1870. *Pamph. L.* 1870, *p.* 751, § 10.

8. Coupon due February 1st, 1879, attached to a "*funded debt bond*," No. 411, for $1000, dated August 1st, 1872, issued under the supplement to the charter of March 29th, 1871. *Pamph. L.* 1871, *p.* 995, § 17.

The declaration contained special counts on the bonds and coupons, together with the common money counts.

The defendant pleaded *non est factum* to the special counts, and *nil debet* to the common counts; whereon issue was joined.

The issues came on to be tried at the Essex Circuit, in the term of September, 1879, before his Honor David A. Depue, a justice of this court.

The plaintiff thereupon produced the bonds and coupons in question, which were received in evidence, the execution thereof having first been admitted.

It was also admitted that the plaintiff was the holder of the bonds and coupons in question, in good faith and for value,

and that the proceeds thereof were used to pay the principal and interest of maturing corporate obligations of the defendant.

The defendant's counsel thereupon moved for a non-suit, on the ground that the plaintiff, besides proving the execution of the bonds and coupons, had not proved the ordinance of the city council, authorizing the issuing of said bonds, and that on the evidence offered, the plaintiff had not shown sufficient ground for recovery, and particularly that the plaintiff had not shown that the consolidated improvement bonds in question were within the limit authorized to be issued by law, which motion was denied by the court; to this decision the defendant's counsel excepted.

The defendant's counsel, by way of defence, insisted as follows, viz.:

1. That in respect to the first-mentioned class of bonds, (*i. e.*, "*funded assessment bonds,*") the act of April 21st, 1876, under which they were issued, is unconstitutional.

2. That in respect to the second, third, fourth and fifth classes of bonds, (*i. e.*, "*consolidated improvement bonds,*") the act of March 17th, 1875, under which they were issued, is unconstitutional; and that, of these classes of bonds, Nos. 1303–1337, 1344–1443, 900–999, 2724–2728, and 1537, were beyond the limit authorized. (Same defence as in the case of *Clark* v. *City of Elizabeth, No.* 30, in respect to the same class of bonds.)

3. That in respect to the seventh class of bonds, (*i. e.*, "*funded debt bonds,*") they were issued without any valid ordinance authorizing the same.

It was shown by the records of the city council, introduced on behalf of the defendant, that an ordinance authorizing the issuing of these bonds, was duly passed by the city council July 15th, 1872, and was immediately thereafter presented to the mayor by the city clerk, duly certified by the president of the city council and the city clerk; that it was not returned by the mayor within ten days after it was so presented to him, but was returned by him December 30th, 1872, several months thereafter, with a memorandum thereon under his signature,

but canceled by pencil marks, as follows: "I return this ordinance to the city council, without approving the same, August 5th, 1872. F. B. Chetwood, Mayor;" and that the said ordinance was afterwards duly published and treated as a valid ordinance, and the bonds issued thereunder.

The books of minutes and proceedings of the city council, containing the ordinances and resolutions authorizing the issuing of the different bonds or obligations in question were produced, and the resolution and ordinance offered in evidence by the plaintiff.

Thereupon the defendant's counsel requested the court to direct a verdict for the defendant, in respect to each of the classes of bonds or obligations in question, which the court declined to do, to which rulings respectively the defendant's counsel excepted.

By the direction of the court, a verdict was thereupon taken for the plaintiff for $34,475.71, being the full amount due on all the coupons, subject to the opinion of this court on a case to be made, with liberty to either party to turn the same into a bill of exceptions or a special verdict.

Argued at February Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and DIXON.

For the plaintiff, *John W. Taylor.*

For the defendant, *W. J. Magie* and *B. Williamson.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. There are two classes of bonds issued by the city of Elizabeth which are drawn in dispute in this case. The first class embraces those denominated " consolidated improvement bonds ;" the second, such as are styled " funded assessment bonds." As all the objections started with respect to the latter class apply to the former class, it becomes unnecessary to subject such objections to a separate criticism.

With regard, then, to the " consolidated improvement bonds :"

These instruments were issued by force of two supplements to the charter of the city—the first enacted on March 29th, 1871, and the second on March 17th, 1875. By a previous supplement passed on March 31st, 1864, an authority was conferred in these words, viz.: "*And in all cases where the city council are authorized to make or levy an assessment* for any improvement heretofore made, or hereafter to be made under the act to which this is a supplement, they shall be authorized to borrow this amount of any such assessment or any portion thereof, in anticipation of the collection of said assessment, to be expended only in payment of such improvement or loans for the payment thereof, and for that purpose to issue the bonds of the city, to be called 'improvement bonds of the city of Elizabeth,' payable in six years from the date thereof, with interest at the rate of seven per cent. per annum."

In the supplement of March 29th, 1871, above referred to, there is a direction that in all cases in which assessments for any improvements had been ratified by the common council and the same had not been paid, notice should be given in a newspaper, requiring the payment of such assessments, or bonds to be given securing the same. This act then contains this provision : "And the said city council shall have power to issue bonds for the renewal of bonds issued in contemplation of the payment of the above-mentioned assessments." The bonds in this clause referred to, were the improvement bonds of the city of Elizabeth, that had been issued by force of the before-recited act of March 31st, 1864. The before-designated supplement of March 17th, 1871, merely regulates the issuance of these bonds in renewal, and styles them " consolidated improvement bonds."

These bonds now involved in this suit, and which were given in renewal of certain of the above-mentioned " improvement bonds of the city of Elizabeth," are questioned, in the first place, on the ground that the city had no authority to issue such improvement bonds. The ground on which this contention is put is, that such class of bonds could be put forth only in cases where the city council was authorized to

make or levy an assessment for improvements, and inasmuch as the provision in the city charter for that purpose was unconstitutional, according to the principles settled by the decision in the case of *Bogert* v. *City of Elizabeth*, 12 *C. E. Green* 568, the power to issue such bonds did not exist. The reasoning is, that as the city had no power to make any such assessment, it was not empowered to issue these improvement bonds, and that consequently such bonds were void in law.

But granting these premises, it seems to me that the conclusion drawn from them, that the bonds in suit are likewise void, is a *non sequitur*. Suppose the improvement bonds were void, as it is claimed, does it follow that the bonds that were given in substitution for them are likewise nullities? It will be observed that if we assume that the city exceeded its power in borrowing the money represented in such improvement bonds, nevertheless the fact remains that the city had incurred honest debts in the laying out and improvement of its streets, and that the money so borrowed went to the payment of such honest debts. The municipality, therefore, was under a moral obligation to repay the money so borrowed, and the consequence is, that upon well-settled rules it was entirely competent for the legislature to convert such moral into legal obligations. When, therefore, by this act of 1871 the city was authorized to renew such bonds, and substitute in their place this class called "consolidated improvement bonds," such an authority was a validation of the original loan, and a recasting of it into a new form. I entertain no doubt that such new bonds corroborated by this legislative sanction, are in all respects valid and enforceable. The rule settled in the case of *Rader* v. *Township of Union*, 10 *Vroom* 519, is entirely pertinent and is quite decisive. In that case it was conceded that the contract then in question was palpably *ultra vires*, as it had been made by an ostensible corporate body which in point of law had no existence, but as the subject of such contract had enured to the benefit of the township of Union, the burthen of payment could by legislation be lawfully imposed on that township. I consider, therefore, that on the concession of the

illegality of the improvement bonds, still their substitutes were made valid by the legislative act from which they proceed.

But this assumption of the illegality of these improvement bonds is founded, as it seems to me, in a misconception of the act creating them. That act declares that the city may borrow money in anticipation of taxes, "in all cases where the common council are authorized to make or levy an assessment for any improvement heretofore made, or hereafter to be made, under the act to which this is a supplement." In the charter here referred to, the city had been empowered to make assessments for improvements in certain cases, and it is to this class of cases to which this authority to borrow money points. Such reference had no regard to abstract questions as to the legal sufficiency of the provisions giving the power to make assessments. The legislature, beyond all doubt, thought such provisions entirely constitutional, and therefore they are referred to as carrying with them the authority imported by their terms. But it would be irrational in the extreme to suppose that it was the design in framing this supplement to make the authority to borrow these moneys dependent on the ultimate decision of the courts with respect to the power to assess the cost of improvements. The charter in terms ordained that certain assessments might be made, and it was in aid of this class of procedures that loans were authorized. Regarding it as a question of legislative intention, I have not been able to see how there can be any uncertainty or obscurity on the subject.

This objection cannot be allowed to prevail.

Nor have I found any greater legal substance in the second objection taken against the present cause of action by the counsel of the defendant, and which objection is, that admitting the legality of these improvement bonds, "they were not a part of the city debt, payment of which could be enforced by general taxation, or out of any fund except the specific assessment in view of which they were issued."

The conclusive answer to this objection is, that the obligation of the city, which is the foundation of the suit, is not thus

restricted in its operation.   The agreement contained in it is that the city will pay the money designated in it, not that it will pay such sum out of a particular fund.   To introduce such a restrictive stipulation would be an unwarranted interpolation.   Nor do I find in any of the provisions of the laws appertaining to this city, anything from which such a circumscription of this contract can be effected by implication.   The law which authorizes the issuing of these instruments contains no intimation that they are not to be instruments imposing a general obligation to pay the money mentioned in them.   They are the bonds of the city, and such bonds do not have the effect of imposing only a partial obligation.   Nor does the fact that the city has a sinking fund devoted specially to the payment of these bonds as they mature, give rise to such an intendment.   Such a contrivance was doubtless designed to put the city in funds to meet these debts as they fell due, but how such an expectation is to have the effect of converting a general engagement to pay into a particular engagement to pay only out of such fund, is not apparent.   The alteration of the contract from the unrestricted form of its expressed terms to the limited form insisted on, is so material and fundamental, that nothing but the plainest exhibition of a legislative purpose to so circumscribe the operation of these contracts, should be permitted to control them in this particular.   If the promise of the city was intended to be a qualified one, it was an easy thing for the legislature to have so declared.   The plain terms of the legislative authorization, and of the instruments conformably issued, are not subject to a conjectural emendation.   There is no solidity in this objection.

The last objection necessary to be considered is the exception that all these bonds that exceeded the limit imposed by the acts of 1871 and 1875 are void.   It is contended that such limit was the assessments ratified and unpaid on March 29th, 1871, and that certain of these bonds exceed that limit.   The legal principle on which this contention rests is, that the officers issuing these instruments are public agents acting under delegated authority expressed in a public statute, and that per-

sons dealing with them act at their peril, and are bound to see that such agents do not transcend their authority. I confess that in my judgment this is the settled rule of the common law, that has almost always been strictly enforced in a long series of the weightiest judgments until within a very recent date; since which, as is well known, there has been quite a train of decisions in the Supreme Court of the United States, the effect of which has been very generally believed to be, as far as their authority extends, destructive of such rule. It cannot be denied that there are, running through these cases, expressions of judicial views, which if thoroughly enforced, would operate not only as a practical abrogation of the doctrine in question, but also of the power of the legislature to impose any trustworthy restrictions on a grant of authority to a corporation to borrow money. In some of these instances it has been not obscurely intimated that the recitals in a municipal bond by the officer issuing it, that a condition precedent to his authority to issue it has been performed, is not only presumptive evidence so as to make a *prima facie* case that such indispensable act has been done, but, in favor of a *bona fide* holder, is conclusive on that subject. The operation of such a view is to impart to an instrument issued by an agent without authority, and in violation of a legislative act, the same effect when used by way of estoppel, as it would have if it were legally issued, the false statement of the unauthorized agent definitively binding the principal. And if we would judge of what the realization in practice of these *dicta* would be, we have but to turn to and examine the case of *Miller* v. *Town of Berlin*, 13 *Blatch.* 245. These facts were there presented, making up the problem for solution. An act of the legislature provided that certain commissioners might borrow, on the faith of the town, such sum of money as a majority of the taxpayers, representing a majority of the taxable property of the town, should fix by writing, and it prohibited the exercise of such power except upon the condition that such writing should be first duly acknowledged and recorded in the county clerk's office; and it made that record evidence. It was admitted that the

requisite number of consents had not been obtained, and no consents were recorded in the clerk's office ; nevertheless, bonds issued by such commissioners in direct violation of this legislation, were held valid and were enforced by judgment. In assigning his reasons for this conclusion, the learned judge who presided on this occasion, after recognizing the ordinary rule that the purchaser of negotiable paper which purports to be executed by an agent, cannot recover without proof that the person who assumes to be the agent is, in fact, the agent of the principal, or has been held out by the principal as an agent, says that the adjudications of the Supreme Court of the United States have invested municipal bonds issued by the officers of a municipality, with anomalous and peculiar immunities, and that it is now too late to apply the ordinary doctrines of the law of commercial paper as the test of the rights and liabilities of the parties to such instruments. That this judgment was the logical conclusion from the expressions of opinions in the cases referred to, appears to me unquestionable, although it would seem certain that the learned justices of the Supreme Court who make use of such expressions would have dissented from the interpretation that what they did was to bestow upon these municipal obligations immunities of a "peculiar and anomalous" character, for these expressions, taken in the light of their context, plainly intimate that they are regarded as true expressions of general legal principles. I have perceived in none of the cases of this class anything like an assumption of a right to introduce with respect to municipal agents, and with respect to the unauthorized use of the authority of their principal, any rule of law that was not deemed applicable to agents of any other kind. In other words, there is no right arrogated to introduce into the body of our jurisprudence any new rule of law upon this subject, and consequently there is no indication of a purpose to sanction anything anomalous. And yet notwithstanding this, and notwithstanding the great weight to which these judicial expressions are entitled, I am entirely convinced that if they were put in practice and enforced, they would introduce a system in this department that

would be completely foreign to anything known to the law as it has been heretofore understood and administered. That such a system does not exist in this state is evidenced by the judgment in the case of *Hudson* v. *Inhabitants of Winslow*, 6 *Vroom* 440, and that it is not likely to be the ultimate form which the subject will assume in the federal tribunals, appears to be quite clear from the indications of the recent case of *Town of Coloma* v. *Eaves*, 92 *U. S.* 493, for these indications point with much directness to a dissent from many of the intimations of doctrine in antecedent cases. The legal rule as announced in the opinions which were prepared in the last-named case adheres closely to the conclusion expressed by Judge Dillon in his excellent exposition of the subject. It is declared by Mr. Justice Strong in these words, viz.: " That where legislative authority has been given to a municipality, or to its officers, to subscribe for stock of a railroad company, and to issue municipal bonds in payment, but only on some condition precedent, such as a popular vote favoring the subscriptions, and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent has been complied with; their recital that it has, made in the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact and binding on the municipality; for the recital is itself a decision of the fact by the appointed tribunal."

Besides this explicit declaration of the legal principle applicable in this class of cases, we have also in the same case, the still more explicit intimation of Mr. Justice Bradley, evincive of a disposition to disallow everything that had appeared in the previous cases that could not be brought within the limits of the foregoing definition. That distinguished jurist, with that comprehensive brevity that characterizes his opinions, in a few words explains his views respecting the theory that the mere execution of bonds by officers charged with the duty of ascertaining whether a condition precedent has been performed, is conclusive, and holding that in order to exempt the *bona fide* holder from the duty of looking beyond

the face of the instrument for the authority of such agent, that there must be a recital in the bond of the performance of the condition which is an essential part of the basis of such authority, and declaring that notwithstanding " various *dicta* to the contrary," the antecedent cases, when carefully examined, would be found to harmonize with the view so expressed. This carefully circumscribed rule thus enunciated, to the purport that when an officer, being clothed with the dual power to execute these bonds and to decide that the condition on which his right so to act has been fulfilled, executes such bonds with a recital in them, thus showing such completion of his authority, the same become incontestable in the hands of an innocent holder for value, would seem to present no ground for adverse criticism. Seemingly every one would admit its correctness as an embodiment of an abstract principle of law, the sole, but very serious, difficulty being in its application to particular cases, to decide when, by the legislative act, such officer was intended to have the capacity to pass upon the question of the perfection of his own credentials. This, it is probable, has been the rule in this class of decisions in the Supreme Federal Court, as in all of them the correctness of the results reached has been challenged, and in some instances forcibly criticised by several distinguished members of that tribunal. Each case, in the absence of a direct legislative expression of purpose, must, in the nature of things, be a specialty, presenting a problem for solution by the rules of statutory construction. The question will ever be, was it the intention of the law-maker in this particular case to endow the officer executing the bonds, or some other functionary, with the power to adjudge that the condition precedent has been performed; and herein is ground for a wide divergence of opinion. This is the single point of real difficulty, because if the officer appointed to decide definitively has so decided, the matter is at an end, the only subject remaining being how such judgment is to be proved, whether by a recital in the executed instrument, or by extraneous evidence. For my own part, I am not able to concur in the view that a legislative intention

to make a particular officer a tribunal to decide whether the prerequisites to the exercise of the authority existed at the time of its exercise, can be raised up by construction alone, when the same act provides that the existence of such pre-requisites shall be made a matter of record. In such case, it seems to me, that the purchaser of the bond is informed that he must look to this record if he seeks an infallible assurance of title. In such a state of facts I cannot perceive the faintest indication that it was the legislative design to permit the naked statement of the officer executing the instrument, by way of recital or otherwise, to controvert and overthrow the testimony of such record. Indeed, the adverse view would seem to imply that it is not in the competency of the legislature to protect the public against fraud and peculation. It is true that the negotiability of the bonds of this class is a matter of importance, but, while granting this, I cannot deny the right of the legislature to put trammels upon such negotiability if it is deemed advisable so to do. In this respect I fully agree with the following remark of Judge Dillon, in his recent monograph on the Law of Municipal Bonds, p. 51 : "On principle, it would seem that the legislative intent to invest local officers, by means of a false recital, with a power so tremendous ought not to be held to exist, unless it is plainly declared or implied, and that more caution in the purchase of these securities than is required by the doctrine of the Supreme Court, would promote the interests both of the maker and the purchaser."

But at the same time, while to this extent I think it altogether an inadmissible construction, under the circumstances mentioned, to infer from one of these laws, framed in the usual way, an authority in the officer to annul by his contradictory statement the prescribed evidence of the fulfilment of the condition precedent, such inference is, in my judgment, in another class of cases entirely legitimate. I refer to those instances in which the authority of the agent is made to depend on a certain state of facts, whose existence or non-existence is exclusively or at least peculiarly within the knowledge of such

agent. In such a condition of things the assumption is not forced that it could not have been the design to require, in view of the circumstance that the bonds to be issued were to be negotiable, every holder to ascertain at his peril that which on many occasions would have been practically unascertainable. In such case the deduction becomes well nigh irresistible that the tenure of instruments of this character was not intended to be so obscure and precarious. Hence the legitimate conclusion that the intent was to invest the officer, who was alone conversant with the facts, with the right to decide as to the existence of such facts, and that such decision was meant to be final so far as respected purchasers for value and without notice of any flaw in the transaction.

It will be observed that this principle of construction embraces the case now under consideration. The facts upon which the question whether a given bond was in renewal of bonds which had been issued in contemplation of the assessments mentioned in the act of March 29th, 1871, were not ascertainable to any reasonable degree of certainty by any one who was not an officer of the city, conversant with its affairs. Therefore the plaintiff in this case was not called upon to endeavor to look into the situation, but had the right to rely on the action of the municipal officers, who, by issuing the bonds, affirmed that the requisite condition of things existed.

The objection cannot prevail.

It may also be well to remark that these bonds, even if admittedly in excess of the legal limit in the act referred to, would be valid on the last principle discussed and adopted in the case of Singer Manufacturing Co. v. City of Elizabeth, decided this present term.

The judgment must be affirmed.