[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 165 
The defendants appeal from an order for restraint pendentelite entered in the Law Division on November 4, 1948, and from an order appointing a custodial receiver entered in the Law Division on November 15, 1948.
 The Legislative Background
The defendant Tacony-Palmyra Bridge Company was incorporated in 1926 under Chapter 247 of the Laws of 1925 (R.S. 48:5-13 etseq.) and constructed a bridge across the Delaware River from Palmyra, New Jersey, to Tacony, Pennsylvania, which was completed in 1929. The defendant Burlington-Bristol Bridge Company was incorporated under the same Act in 1928 and constructed a bridge across the Delaware River from Burlington, New Jersey, to Bristol, Pennsylvania, which was completed in 1931. When the bridges were built the Statute provided that New Jersey, acting in conjunction with any adjoining State or municipality thereof, would have the right to acquire them at and after the expiration of five years from the date of completion at a cost formula therein *Page 166 
prescribed and that at the end of fifty years they would revert to the State without cost. See R.S. 48:5-22; R.S. 48:5-24. Plaintiffs allege that under this formula the bridges could have been acquired in 1948 by New Jersey, acting in conjunction with Pennsylvania, for approximately $5,420,000.00. Pertinent Federal laws authorizing the construction of the bridges likewise provided that they could be acquired by New Jersey or Pennsylvania, or political subdivisions thereof adjoining the bridges, by purchase or condemnation in accordance with State law and that if they were so acquired after twenty years compensation therefor would be limited to the cost formula therein set forth. See 44 Stat. Part 2, pp. 588, 1024. Plaintiffs allege that the Tacony-Palmyra Bridge would become subject to the Federal formula in 1949, that the Burlington-Bristol Bridge would become subject thereto in 1951, and that both bridges would be available thereunder in 1951 to New Jersey and Burlington County at an aggregate cost approximating $5,000,000.00.
By legislation adopted in 1934 and revised in 1946 (P.L. 1946c. 318; R.S. 27:19-26 et seq.) every County, acting through its Board of Chosen Freeholders, was authorized to create a Bridge Commission with authority to acquire bridges, with the consent of the adjoining State where the bridges extended therein, and with the approval of the Board, to issue bonds secured by the tolls or other income from the operation of the bridges. In 1948 this legislation was amended to eliminate the express provision for the consent of the adjoining State and to provide that bonds issued by the Bridge Commission would be lawful trust investments. See R.S. 27:19-28; R.S. 27:19-32.2.
By Chapter 401 of the Laws of 1947 the Legislature amended the Statute under which the Tacony-Palmyra Bridge Company and the Burlington-Bristol Bridge Company were incorporated. The amendment authorized sale of the bridges and stated that any successor to a bridge company shall have all of its rights, privileges and franchises and be subject to all of its statutory restrictions and limitations, provided, however, that if the successor is a Bridge Commission then the Commission's right to *Page 167 
charge tolls shall cease forty-five years after the opening of the bridge and in consideration thereof the bridge shall not "be subject to acquisition by, or be subject to becoming the property of, any State or States, municipality or municipalities" under the terms of the Statute and that the right of the Commission in the bridge shall be perpetual. Plaintiffs allege that this amendment enabled a County to organize a Bridge Commission, have it "acquire a privately owned bridge for any price" and thereby, in effect, terminate the rights of the State and Burlington County to acquire the bridge under the formulas prescribed in the pre-existing State and Federal legislation as well as the reversionary right of the State under R.S. 48:5-24 to obtain the bridge free of cost at the expiration of fifty years. Plaintiffs contend that the amendment, as applied to the transactions hereinafter described, constituted "donations of state and county property rights" in favor of private interests in violation of Paragraphs 19 and 20 of Article I of the 1844 Constitution embodied in Article VIII, Section 3, Paragraphs 2 and 3 of the 1947 Constitution. They also contend that it embraces an object not expressed in its title in violation of Article IV, Section 7, Paragraph 4 of the 1844 Constitution embodied in Article IV, Section 7, Paragraph 4 of the 1947 Constitution, and that it grants exclusive privileges to private corporations in violation of Article IV, Section 7, Paragraph 11 of the 1844 Constitution embodied in Article IV, Section 7, Paragraph 9 of the 1947 Constitution.
 The Transactions Under Attack
We come now to a general description of the pertinent transactions as alleged by the plaintiffs and as outlined in the papers submitted on their behalf. Prior to October, 1948, defendants Clifford R. Powell and others acquired the stock of Burlington-Bristol Bridge Company. Thereafter, they proceeded with various steps which were calculated to and did result in the acquisition by the Burlington-Bristol Bridge Company of the stock of the Tacony-Palmyra Bridge Company, the creation of the defendant, Burlington County Bridge Commission by the defendant, Board of Chosen Freeholders of the County of *Page 168 
Burlington, on October 22, 1948, followed on the same day by the Bridge Commission's purchase of the stock of the Burlington-Bristol Bridge Company for the sum of $12,000,000.00, its issuance of bonds in the sum of $12,400,000.00, the election of the three members of the Bridge Commission as officers and directors of the Burlington-Bristol Bridge Company and the Tacony-Palmyra Bridge Company, the dissolution of the companies and the transfer of their property to the Bridge Commission. Plaintiffs allege that the members of the Board of Freeholders and the members of the Bridge Commission in taking the above steps, "were acting not in the exercise of their own endeavor, judgment and volition, but under the improper influence, direction, control and solicitation of the defendant, Clifford R. Powell, who exercised influence in the selection of said Bridge Commissioners by the Board of Chosen Freeholders of Burlington County, acting not only on his own behalf, but on behalf and with the full knowledge of the other defendant stockholders of the Burlington-Bristol Bridge Company", that the transactions were completed without notice and with such haste as to render impossible "any fair consideration of the legality, business merits, public policy or prudence" thereof, and that in connection therewith the defendant, Clifford R. Powell and other individual defendants committed acts of fraud for their own private gain. Plaintiffs further allege that the acquisition by the Bridge Commission of the corporate stock of the Burlington-Bristol Bridge Company was in violation of Article I, Paragraph 19 of the Constitution of 1844 embodied in Article VIII, Section 3, Paragraph 2 of the Constitution of 1947, which prohibits any County from becoming the owner directly or indirectly of any corporate stock and that it resulted from a fraudulent conspiracy which induced the Bridge Commission, with the approval of the Board of Freeholders, to acquire the corporate stock and ultimately the bridges without any bargaining, without regard to their availability at an early date at a cost substantially below the price paid, without knowledge of the material facts, and without the exercise of independent judgment. *Page 169 
In their complaint as amended and further amended, plaintiffs, as taxpayers and citizens of the County of Burlington, seek comprehensive relief including declarations that P.L. 1947 c.
401 and the resolutions of the Board of Freeholders and the Bridge Commission relating to the acquisition of the bridges are null and void; rescission of the contracts relating to the acquisition by the Bridge Commission of the stock or property of the Burlington-Bristol Bridge Company and the Tacony-Palmyra Bridge Company; money judgment in favor of the County of Burlington and against defendant Clifford R. Powell and others for damages resulting from the alleged fraudulent conspiracy; an injunction against all acts in furtherance of the resolutions of the Bridge Commission purchasing interests in the Burlington-Bristol Bridge Company or the Tacony-Palmyra Bridge Company or in their bridges; and the appointment of a custodial receiver. On October 26, 1948, four days after the acquisition of the bridges by the Bridge Commission, plaintiffs obtained an adinterim restraint from the Law Division which was followed by the order for restraint pendente lite. Within the terms of the restraint the Bridge Commission is operating the bridges, the tolls which it receives are being maintained within the State, subject only to their use in the actual operation and maintenance of the bridges, and there has been no further distribution or negotiation of the bonds issued by it. The Law Division's subsequent order dated November 15, 1948, appointed a custodial receiver, transferred the operation of the bridges to him, and directed that he restore toll charges which had been reduced by the Commission prior to the filing of the plaintiffs' complaint but this order was stayed pending appeal and the custodial receiver never took possession.
Following the entry of the orders under appeal, the Attorney General submitted to the Governor of New Jersey a report with respect to the acquisition of the bridges by the Bridge Commission and thereafter an information and complaint against the defendants herein and others was filed by the Governor and Attorney General in the Chancery Division of the Superior Court. On November 23, 1948, plaintiffs filed their *Page 170 
further amended complaint in the Law Division. The defendants contend that we are not at liberty to consider the plaintiffs' further amended complaint or, indeed, any of the occurrences subsequent to the entry of the orders appealed from. It may well be doubted whether, in view of the public nature of the proceeding and the important issues presented, justice would be served by disregarding events which have admittedly occurred during the pendency of the appeal. In any event, if the subsequent events would alter our conclusions, the proper procedure presumably would not be dismissal, as defendants contend, but rather a remand to the Law Division. However, this need not be pursued since we are satisfied that our determinations may rest on the papers before the Law Division at the time its interlocutory orders were entered, and that, although they may be strengthened, they would not otherwise be affected by the subsequent occurrences.
Bearing in mind that we do not now have before us the ultimate merits of the controversy which must await full trial and adjudication, and that the only question before us is whether the interlocutory orders restraining the defendants pendente lite
and appointing a custodial receiver should be permitted to stand pending such trial and adjudication, we have no present occasion to consider the appellants' contentions other than the following: (1) that the plaintiffs as taxpayers and citizens have no standing to maintain this proceeding; (2) that no restraintpendente lite should have issued in view of the doubts on the ultimate merits; (3) that no custodial receiver should have been appointed; and (4) that plaintiffs are estopped from seeking relief.
 1. The Standing of the Plaintiffs as Taxpayers and Citizens
The defendants contend that plaintiffs as taxpayers and citizens of the County of Burlington do not have a sufficient interest to sustain their standing as plaintiffs and in support they rely mainly upon the fact that the bridges will be paid for entirely out of tolls and that plaintiffs and other taxpayers and citizens will not have their tax burden increased. On the *Page 171 
other hand, the plaintiffs contend that they have a sufficient standing as taxpayers and citizens of Burlington County without any showing of private pecuniary harm although they do allege that the prospective users of the bridges, including plaintiffs, will be subjected to the burden of repaying $12,000,000.00 in tolls whereas the State or County could have obtained the bridges through legal proceedings which "would have made it necessary for them to pay only $5,000,000.00 in tolls". They urge that since their complaint encompasses what under former practice would have been separate Prerogative Writ and Chancery proceedings they may rely on the authorities which have heretofore sustained taxpayers' suits at Law (see Ferry v. Williams, 41 N.J.L. 332(Sup.Ct. 1879)) and in Chancery (McKinley v. Freeholders ofUnion County, 29 N.J. Eq. 164 (Ch. 1878); Crampton v.Zabriskie, 101 U.S. 601, 25 L.Ed. 1070 (1880)).
The standing of taxpayers and citizens, under appropriate circumstances and without any showing of increased tax burden, to maintain proceedings seeking to remedy wrongful acts of public officials has long been recognized in our State. Thus, in Ferryv. Williams, supra, Mr. Justice Dixon pointed out (at p.
337) that, "our courts have exercised a large discretion in annulling the illegal acts of municipal bodies and officers, and compelling the performance of their public duties at the instance of citizens and taxpayers who were not otherwise interested in the controversy than was the rest of the community", and cited(at p. 338) "instances of interference by the courts with official action affecting only public rights at the suit of private persons, where questions of taxation were not at all concerned, or were so remote from the matters complained of as not to be noticed in the decision." Cf. Tube ReducingCorporation v. Unemployment Compensation Commission, 1 N.J. 177, 62 Atl.2d 473, 475 (Sup.Ct. 1948). In Oliver v.Jersey City, 63 N.J.L. 96, 98 (Sup.Ct. 1899) (rev'd. on other grounds in 63 N.J.L. 634 (E. A. 1899)) the court, in sustaining the standing of a taxpayer to attack official action without any showing of injury except as a member of the public using the highway, stated that it could find "no *Page 172 
consistent rule of law nor any reason of wise public policy" which would deny relief "when the citizen at his own expense, and at the risk of burdensome costs, seeks to intervene for the purpose of averting imminent injury to the public of which he is a part." Similarly, in the more recent decision of Gimbel v.Peabody, 114 N.J.L. 574 (Sup.Ct. 1935) the court sustained the standing of a taxpayer to prosecute a proceeding to set aside a municipal lease of lands for use in the operation of a greyhound racing track in violation of the Constitution despite the absence of any showing that the taxpayer would suffer any pecuniary loss or be in anywise affected except as a member of the general public.
Broad and wholesome recognition of taxpayers' suits as an effective means for restraining official misconduct is found not only in our own State but in other States throughout the country. See Simpson, Fifty Years of American Equity, 50 Harv. LawRev. 171, 231 (1936) and the authorities cited in Note on "Taxpayers Suits as a Means of Controlling the Expenditure of Public Funds", 50 Harv. Law Rev. 1276, 1281 (1937). InMiller v. Milford, 224 Iowa 753, 276 N.W. 826,114 A.L.R. 1423 (Sup.Ct. 1937) the court in sustaining an action by taxpayers and citizens to set aside a contract for the construction of a municipal lighting plant, to be paid for by revenues from consumers and not by taxation, disposed of a contention, analogous to that made by the defendants here, in the following pertinent language:
"The excessive cost of the plant, which consumers must pay, would postpone the time the city would obtain title to the plant. It cannot be said that consumers would not be benefited by an earlier acquisition of ownership of the plant, free from debt, and the fixing of rates based on a debt free plant. The securing of the plant at the lowest price possible through the mandatory requirements of the statute is of substantial interest to the citizens of the town. If appellants' contention were sustained, no recourse could be had to the courts for relief from void, extravagant, ultra vires action of the city council, because there would be no one who had authority to institute the suit to prevent a public wrong, except the state in certain circumstances. The public welfare requires that such right be lodged in the citizens of a community."
We are satisfied that within the cited authorities and upon sound reason the plaintiffs' standing should be sustained. They *Page 173 
raise constitutional questions and make serious charges of official misconduct affecting the public interest. Plaintiffs instituted their action with dispatch thereby aiding in maintaining the status quo and although the Governor and Attorney General subsequently filed a related information and complaint, they have not evidenced any desire that plaintiffs be displaced in this proceeding. On the contrary, the Attorney General appeared before the Law Division in support of plaintiffs' restraint pendente lite. Considering all of these circumstances and the interlocutory stage of the proceeding, it seems clear that the interests of complete and effective justice to the public as well as the parties require that the defendants' efforts to dismiss the proceeding, on the ground that the plaintiffs have no standing, should fail.
 2. The Restraint Pendente Lite
The Law Division's order for restraint pendente lite
maintained the status quo as it existed at the filing of the plaintiffs' complaint; it prevented further steps in pursuance of the transactions under attack and transference out of the State of income from the operation of the bridges; and, in practical effect, prevented further distribution of the bonds to persons who might claim to be bona fide purchasers. It thus served, insofar as possible, to prevent impairment of the subject matter of the litigation and accomplished this without interference with the operation of the bridges in regular course by the Bridge Commission. Indeed, at the argument counsel for the defendants conceded that the restraint pendente lite has thus far caused them no substantial harm. Nevertheless, they assert that the plaintiffs' rights are at least doubtful and that the restraintpendente lite must, therefore, be denied. In advancing this contention defendants have made the assumption that the Law Division's restraint pendente lite is to be treated as a preliminary injunction (Rule 3:65) governed generally by Chancery precedents (Citizens Coach Company v. Camden HorseRailroad Company, 29 N.J. Eq. 299 (E. A. 1878)) rather than a supersedeas (Rule 3:81-5) governed generally *Page 174 
by Prerogative Writ precedents (Hunt v. Lambertville,46 N.J.L. 59 (Sup.Ct. 1884)). Even if their assumption is correct, their contention is without merit. See Christiansen v.Local 680, 127 N.J. Eq. 215, 219 (E. A. 1940) where Mr. Justice Heher speaking for the Court of Errors and Appeals set forth the applicable Chancery principles, pointing out that the power to issue a restraint pendente lite "is exercised whenever necessary to subserve the ends of justice", that "justice is not served if the subject-matter of the litigation is destroyed or substantially impaired during the pendency of the suit" and that "doubt of the validity of the complainants' asserted cause of action is, therefore, not an adequate reason for refusing to maintain the subject of litigation in statu quo pending a definitive settlement of the right on final hearing". See alsoImperial Trust Co. v. Magazine Repeating Razor Co.,138 N.J. Eq. 20, 26 (Ch. 1946); Hodge v. The Cuba Co., 142 N.J. Eq. 340,348 (Ch. 1948); Tracy v. Tracy, 140 N.J. Eq. 496, 502(E. A . 1947). Cf. Ferraiuolo v. Manno, 1 N.J. 105, 62Atl.2d 141 (Sup.Ct. 1948). In view of the danger of impairment of the subject matter of the litigation and the admitted absence of substantial harm to the defendants, there can be no adequate reason for disturbing, at this time, the Law Division's restraint pendente lite.
 3. The Custodial Receiver
Plaintiffs contend that in addition to the restraint pendentelite, the appointment of the custodial receiver was necessary for preservation of the subject matter pending trial. They concede that the restraint pendente lite has been effective and that there is no present evidence to indicate that the bridge properties are not being maintained properly or are in anywise in jeopardy. They urge, however, that the continued operation of the bridges by the Bridge Commission pending trial might ultimately give rise to an estoppel against plaintiffs. There is nothing before us which affords reasonable basis for the suggestion that the operation by the Bridge Commission within the limits of the court's restraint might create a *Page 175 
stronger basis for an alleged estoppel than would the operation of the bridges, in the same fashion, by the court's receiver. Plaintiffs stress the fact that the receiver was ordered to restore certain tolls which had been reduced by the Bridge Commission prior to the filing of plaintiffs' complaint. However, plaintiffs have not at any time made any independent application to the Law Division to have the Bridge Commission reinstate the original tolls; they are at liberty to make such application if they deem this relief essential or appropriate.
In support of their position that the appointment of the custodial receiver should be vacated, the defendants urge, in the first place, that the plaintiffs have made no showing of danger to the bridge properties sufficient to justify the extraordinary displacement of the Bridge Commission in favor of a receiver.Cf. Orshefsky v. Mechanics Trust Co., 120 N.J. Eq. 527, 532(Ch. 1936). In the second place, they urge that even if there had been such a showing this Court would have no power to appoint a receiver for a public body. Cf. Depew v. Venice DrainageDist., 158 La. 1099, 105 So. 78 (1925) with Broadhurstv. Board of Commissioners, 195 N.C. 439, 142 S.E. 477
(1928). However, this issue of power need not be determined at this time. Assuming that such judicial authority does exist considerations implicit in the doctrine of separation of powers dictate that it be exercised at the instance of taxpayers only upon a strong showing of compelling urgency. In the light of the evidence before us and the continued effectiveness of the restraint pendente lite, we are satisfied that plaintiffs have made no such showing.
 4. The Alleged Estoppel of Plaintiffs
The final contention is that plaintiffs are barred from seeking the relief prayed for in their complaint. This contention is evidently rested on the position that the bonds of the Bridge Commission are complete on their face, were issued pursuant to a statutory provision (P.L. 1946 c. 318, R.S. 27:19-32.1) embodying a covenant by the State of New Jersey, and the Commission and the plaintiffs are, therefore, "estopped *Page 176 
from contesting the validity of those bonds, or from taking any steps or actions to prevent bona fide holders from recovering the principal and interest." The common law doctrine of estoppel to attack the validity of municipal bonds is more limited in our State than appellants assert. See Hudson v. Inhabitants ofWinslow, 35 N.J.L. 437, 443 (Sup.Ct. 1872); Mutual BenefitLife Ins. Co. v. Elizabeth, 42 N.J.L. 235, 245 (Sup.Ct.
1880); Read v. Atlantic City, 49 N.J.L. 558, 564 (Sup.Ct.
1887) aff'd 50 N.J.L. 665 (E. A. 1888). In any event, the estoppel when applicable, benefits only bona fide
purchasers of the bonds. See Dillon, Municipal Corporations (5thEd. 1911) Sec. 930, p. 1473. No bondholders are before us on the appeal and we are not in any position to determine now whether there will be any bona fide purchasers for value. Indeed, the only appellants are the Bridge Commission and its members, the Board of Freeholders and its members, and the two bridge companies; presumably none of these appellants is in a position to assert the alleged superior rights of bondholders or others. The appellants' allegations of estoppel, together with their allegations that plaintiffs will not be entitled to all of the relief they seek without joinder of all participating parties and restoration of the entire status quo ante, must, with the other issues on the ultimate merits, await adjudication after full trial and are not properly available at this time.
The order dated November 4, 1948, for restraint pendente lite
is affirmed; and the order dated November 15, 1948, for appointment of custodial receiver is vacated without prejudice to application for restoration by the Bridge Commission of the tolls at the rates charged immediately prior to October 22, 1948. *Page 177