CITY OF APPLETON, Respondent, vs. OUTAGAMIE COUNTY and others, imp., Appellants.

RICHARD and wife, Respondents, vs. OUTAGAMIE COUNTY and another, Appellants.

*May 11—October 9, 1928.*

6

For the appellants there was a brief by *John A. Lonsdorf,* district attorney, and *Bradford & Bradford* of Appleton, associate counsel, and oral argument by *Mr. Lonsdorf* and *Mr. Francis S. Bradford.*

*Albert H. Krugmeier,* special city attorney, and *Joseph*

*Witmer,* associate counsel, both of Appleton, for the respondents.

The following opinion was filed June 18, 1928:

ROSENBERRY, J. The facts set out in the complaints and found by the court present many matters which are not necessary to a consideration and determination of the interesting and fundamental questions raised upon the appeals here. We shall state only such facts as are necessary to present the questions decisive of the controversy.

Sec. 59.04, Stats., provides:

"(1) Every county board shall meet on the Tuesday next succeeding the second Monday of November in each year at the county seat for the purpose of transacting business as a board of supervisors. . . .

"(2) A special meeting of any county board shall be held only upon a written request of a majority of the members thereof addressed and delivered to the county clerk, and specifying the time and place of such meeting. The time shall not be less than one week from the delivery of such request to the clerk."

Sec. 70.61 provides:

"The county clerk of each county shall annually, before the second Tuesday of November, prepare a statement of the latest statistics of population and such other statistical information as he may have and lay the same . . . before the county board at its annual meeting in November," etc.

Sec. 70.62. "The county board shall also, at such meeting, determine by resolution the amount of taxes to be levied in their county for county purposes for the year and also the amount to be raised by tax in each town for the support of common schools for the ensuing year," etc.

The county board of Outagamie county met for its annual meeting, which had been adjourned in accordance with the statute, on November 18, 1926. At this meeting the county

board levied for the year 1927 taxes amounting in the aggregate to $851,530.77. Among the taxes levied was a tax (a) $81,000 for payment of principal and interest upon highway bonds; (b) $29,250 for county and town aid roads; (c) $210,945.40 for highway purposes; (d) two-mill direct tax of $173,665.33 for county bridge and road fund; and (e) $65,000 for general county tax.

Pursuant to the statute a special meeting was called, and on December 10, 1926, the board rescinded the resolution levying $210,945.40 as a general highway tax; $29,250 for county and town aid roads; $68,000 for the payment of principal of certain bonds, and $13,000 for interest; because the road and general highway tax was in excess of the limitations of the statute and the $68,000 levy was an error. The board then made a new levy as follows: $29,250 to meet the petition of town, city, and village for road aid, $210,295.40 as a general highway tax, and $305,195.40 as a general county tax, making a total levy of $783,570.77, the difference in the totals being $68,000, the amount of the error.

It is argued on behalf of the plaintiffs that, the county board having met at the time designated in the statute and discharged its statutory duty by levying the county taxes, it could not thereafter, at a special meeting, make a new levy.

What may the county board do at a special meeting? Sec. 59.07, relating to general powers of the board, provides:

"The county board of each county is empowered at any legal meeting to: . . .

"(5) Apportion and order the levying of taxes as provided by law, and direct the raising of such sums of money as may be necessary to defray the county charges and expenses and all necessary charges incident to or arising from the execution of their lawful authority. . . .

"(18) Perform all other acts and duties which may be authorized or required by law."

It is apparent from the language of the statutes that, a special meeting being in the language of the statute a legal meeting, any of the powers which the board possesses may be exercised at a special as well as at a regular meeting unless otherwise specifically provided.

By the provisions of sec. 70.62 already quoted, the county board is required at the meeting held on the second Tuesday of November to "determine by resolution the amount of taxes to be levied in their county for county purposes for the year." It is argued that the language of this statute is mandatory, and that if the county board fails or neglects to perform its duty, and more especially in this case having once performed it or undertaken to perform it, its power in that respect is exhausted and it may not thereafter exercise the power.

By sec. 70.63 the county clerk is required within ten days after the assessment of values by the county board, which is to be done at the meeting held on the first Tuesday after the first Monday in November, to "certify to the clerk of, and charge to, each town, city and such village excepting in cities of the first class, the amount of each and all such taxes so apportioned to and levied upon the same."

In the course of orderly procedure it is quite apparent that the duty of levying the tax should be expeditiously performed. While there may be a review of the apportionment made by the county board under the provisions of sec. 70.64, the taxes for the current year are collected in accordance with the apportionment as made and the error if any corrected the following year in accordance with the provisions of sub. (11). When there is no substantial reason why the thing by statute required to be done might not as well be done after the time prescribed as before; no presumption that by allowing it to be so done it may work an injury or wrong; nothing in the act itself, or in other acts relating to the same subject matter, indicating that the legislature did not intend that it should rather be done after the time

prescribed than not done at all,—the courts will deem the statute directory merely. *State ex rel. Cothren v. Lean,* 9 Wis. 279. *Vide Mills v. Johnson,* 17 Wis. 598; *Burlingame v. Burlingame,* 18 Wis. 285; *Application of Clark,* 135 Wis. 437, 115 N. W. 387.

The interpretation of this statute cannot be made to depend wholly upon the exigencies of the situation presented by the facts in this case. As construed it will apply to every county in the state under all circumstances. Considering the magnitude of the public interests involved, the character of the acts to be performed, the probability that in many cases the exercise of such a power at a special meeting may be highly desirable in the public interest, it is considered that the statute should be held to be directory and not mandatory although the word "shall" is used. The levy made at the December meeting was timely and within the statutory power of the county board.

It is not denied that by the levy of November 18th the board levied a sum largely in excess of that which it was authorized to levy for highway purposes. It is also apparent that at the December 16th meeting the county board by the new levy added to the levy for general county purposes the exact amount by which the November levy for highway purposes exceeded the powers of the board. By the resolution adopted at the December meeting the amount levied for highway purposes in excess of the board's authority was $240,195.40. By adding to this the sum of $65,000, being the amount levied at the November meeting as a general county tax, we have the amount of $305,195.40, the amount levied at the special session as a general county tax. This levy is attacked as fraudulent. It is conceded that the county board had the authority under the law, at the regular November meeting, to levy $305,195.40 as a general county tax, but it is alleged that the county board levied it as and for a general county tax with the intention of subsequently diverting it from the purpose for which it was levied to highway

purposes in order to meet the appropriations which had already been made for highway purposes; that therefore the general county tax as levied at the December meeting is fraudulent and void and its collection should be enjoined. Edmund Burke said that it was not possible to indict a nation. Certainly if the allegations of the complaint are true it constitutes an indictment of the county board of Outagamie county. On the other hand, it is the very earnest contention of the county that it was actually in need of these sums for the lawful purposes of the county, repayment of loans, and other matters set out in detail in the briefs. It is the contention of the plaintiffs that it was not in need of that sum, and the court is asked to inquire and ascertain what the needs of the county were, and after determining that fact to permit only such sum to be paid in to the county treasury. This presents an illustration of the prevailing tendency to ignore the doctrine of separation of powers. Here one co-ordinate branch of the government, the judicial, is asked to investigate the conduct of another co-ordinate branch, the legislative, to ascertain as a fact, in the course of judicial proceedings, what amount the county board in the exercise of a sound discretion should have levied, substitute its judgment for the judgment of the county board, and enjoin public officers accordingly. It is conceived to be a fundamental principle of our government that when one co-ordinate branch acts within its constitutional field, its action may not be inquired into or interfered with by another co-ordinate branch. Most certainly a court cannot inquire into the character of the intent with which a co-ordinate branch of the government exercises its powers and, if it deems that the co-ordinate branch of the government is not acting with proper intent, to set aside and nullify its acts. The facts recited in briefs of counsel disclose a situation which cries out loudly for relief. The county board has acted apparently with very little regard either to statutory power or statutory methods of procedure. Until it acts in viola-

tion of law its acts cannot be restrained by the courts. If the court should attempt to ascertain what sum the county needed and limit the amount of the levy to that sum, the power vested in the county board would be exercised by the court. The remedy for the evils which the trial court found to exist is political, not judicial. Courts cannot assume the responsibilities of the electorate. If legislative agents do not act wisely or in the public interest, the courts cannot control the exercise of their discretion. *Ekern v. McGovern,* 154 Wis. 157, 206 *et seq.,* 142 N. W. 595.

The plaintiff Richard sought to have the levy of $305,195.40 declared null and void and, in the event that any part of it was held valid, that the court determine the amount of tax illegally levied, enjoin its collection, and to that extent extinguish an apparent lien upon plaintiff's land.

This action, as already stated, was begun on December 30, 1926. It does not appear by the allegations of the complaint, nor in the ordinary course of events could it have been a fact, that the county of Outagamie or the defendant Marie Ziegenhagen as treasurer of Outagamie county was then armed by any process or tax warrant by means of which a lien could have been created upon plaintiff's property or his property taken to satisfy the claim of Outagamie county. In fact it appears by paragraph 15 of the complaint that a tax warrant was in the hands, not of either of the defendants, but of the treasurer of the city of Appleton. We are not advised by what process it is supposed that an action against the treasurer of Outagamie county can operate to stay the hands of the treasurer of the city of Appleton, who is charged with the duty of enforcing collection of the taxes levied by the state, county, and city. There can be no question but that under the authorities this action could not be maintained by Richard. *Duluth L. Co. v. Hawthorne,* 139 Wis. 170, 120 N. W. 864. Certainly it was not necessary for the plaintiff Richard to seek to enjoin the whole process of tax collection in Outagamie county in order to protect his

property from a threatened lien. A taxpayer has no competency as such to stay the hand of governmental officers engaged in the discharge of official duty unless and until he is threatened directly with loss of liberty or property. Under the allegations of the complaint the plaintiff could be deprived of his property only through the execution of the tax warrant, which was in the hands of the city treasurer of the city of Appleton. An attempt to reach that situation by enjoining the whole process whereby Outagamie county secured the public revenues necessary to discharge its functions as an agency of the state, indicates an entire misconception of the law and of the legal relations of the various parties in interest. In no event has the plaintiff Richard shown himself qualified to maintain the action begun by him against Outagamie county and its treasurer.

The allegations of the complaint in the other action are summarized by counsel for the city as follows: the taxpayers of plaintiff city pay their share of said illegal tax extended upon the tax roll against their property within the limits of plaintiff city, under a mistake of fact and under the belief and in reliance upon the representations of the said county board that such illegal excess was in fact necessary for county purposes; that the plaintiff city pays 41.975 per cent. of all county taxes; that the excessive tax levied and collected by the defendant city treasurer is approximately $100,483; that the city needs more money for its activities than the three per cent. of the assessed value legally levied for municipal purposes; that the total tax levy has increased both for city and county purposes for ten years, and facts showing the increase are set out; that because of the illegal tax levied by the county the city has been handicapped in carrying out plans for the enlargement of its waterworks plant; that by reason of said illegal tax and to check the growing complaint by its taxpayers, the city was obliged to curtail its proposed appropriations for the carrying out of its governmental functions and to make public improvements

tending to develop the plaintiff city and to make it a more desirable and attractive place to live; that by reason of the high tax the city is handicapped in competing with other cities in the state and is less attractive for manufacturing industries.

What was said in the decision in the matter of the application of the city of Racine for leave to bring suit against certain state officers (196 Wis. 604, 220 N. W. 398, 221 N. W. 109) need not be repeated here. The city's power to levy taxes for municipal purposes is in no way and to no extent impaired by the exercise by Outagamie county of its powers to levy taxes for county purposes. In any event, the city officers of the city of Appleton, so far as their duties relate to the collection of state and county taxes, act for and on behalf of the state and county. The city as such has no interest whatever in the money collected by its officers pursuant to state and county tax levies. The idea that the city of Appleton can restrain its treasurer from paying over moneys in his hands belonging to the county because the city needs more money for municipal purposes is certainly a novel one. It rests upon an entire misconception of the functions of a city under our law. While the city has many powers, duties, and functions, it is not made the guardian of its citizens in their relations with the state and county.

This matter was extensively treated in *State ex rel. Sheboygan v. County Board, etc.* 194 Wis. 456, 216 N. W. 144. Upon the question here under consideration, this case is ruled by that.

*By the Court.*—The mandate in each case will be: Judgment appealed from is reversed, and cause remanded with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on October 9, 1928.