HERMAN VANDERWART, *ET ALS.*, JUDGES OF THE COUNTY COURT OF THE COUNTY OF BERGEN, AND THE COUNTY OF BERGEN, PLAINTIFFS-APPELLANTS, v. DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY AND ANTHONY SCHILLIZZIE, DEFENDANTS-RESPONDENTS.

Argued September 12, 1955—Decided October 3, 1955.

342

*Mr. Milton T. Lasher* argued the cause for the appellants.

*Mr. John F. Crane,* Deputy Attorney-General, argued the cause for the respondent Department of Civil Service (*Mr. Grover C. Richman, Jr.,* Attorney-General, attorney).

*Mr. Julius E. Kramer* argued the cause for the respondent Anthony Schillizzie (*Messrs. Chandless, Weller and Kramer,* attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J. This is an appeal from a determination of the Department of Civil Service directing the county judges of Bergen County as the statutory appointing authority in the matter not to pass over the defendant Anthony Schillizzie in making an appointment to the position of county probation officer. This appeal was certified by this court on its own motion while pending in the Appellate Division of the Superior Court.

The defendant Anthony Schillizzie worked for the County of Bergen on a temporary basis from October 1943 to November 24, 1950 when he was suspended and thereafter dismissed. At first he was in the Child Welfare Department, but in January 1945 he was transferred to the Probation Department. His initial appointment in that department was as an investigator, but in October 1945 he was appointed temporarily as a probation officer, there being at that time no civil service list available from which permanent appointments could be made.

Over the years of his employment the defendant had taken three civil service examinations for the position of probation officer and had failed to pass any of them. After his dismissal and on February 11, 1953, however, the defendant passed the examination for county probation officer. Upon learning that Schillizzie had been certified as eligible for appointment, the appointing judges addressed a letter under date of May 7, 1953 to the Department of Civil Service stating that the services of Schillizzie were not satisfactory

and that he had been discharged by reason of his conduct in connection with a raid conducted by men from the prosecutor's office, and that in their opinion he was not a man who was morally qualified to occupy the important office of probation officer. Attached to this letter was a "Report on the Circumstances Surrounding the Discharge of Anthony Schillizzie as an Employee of the Bergen County Probation Office," which had been submitted to the county judges by the chief probation officer.

On May 19, 1953 the Department of Civil Service on its own motion removed the defendant's name from the employment list for the position of probation officer. From this action the defendant appealed to the Department of Civil Service. The defendant's appeal was sustained and his name was ordered restored to the employment list for the position of probation officer, the Department indicating that Schillizzie should have been accorded an opportunity to tell his story before the County Judges of Bergen County as the appointing authority. Thereupon County Judges Del Mar and Vanderwart called Schillizzie before them to provide him with the opportunity to tell his story and at this hearing the defendant was represented by counsel. As a result of that hearing and by letter dated December 23, 1953, Judge Vanderwart, for himself and Judge Del Mar, wrote a letter to the Department of Civil Service advising it that during the period of Schillizzie's service with the probation office

"* * * an event occurred during his off-duty hours which seemed to us, as Judges, to preclude the possibility of his acting as a probation officer. * * * that the conduct of Mr. Schillizzie has precluded his opportunity at our hands to be a Probation Officer of the County."

Thereafter it became necessary to appoint a woman probation officer, and in making the appointment Judge Vanderwart certified, as required by *R. S.* 11:10–8, that the reason for the nonappointment of Schillizzie was that Judge Del Mar (who by this time had retired) and he had conducted a hearing concerning the appointment of Schillizzie and had

reached the conclusion that he lacked the essential moral qualifications necessary for the office of probation officer.

Schillizzie then appealed again to the Department of Civil Service from this action in passing over his name, and on the hearing held thereon the Department decided in his favor and ordered the appointing authority to reconsider the matter of the appointment of probation officer and in doing so not to pass over Schillizzie as a disabled veteran. It is from this determination that the plaintiffs appeal.

At the first hearing before the Department of Civil Service in July 1953 Deputy Attorney-General Stephen Toth testified that Schillizzie had come to the police station at Garfield, New Jersey, at about 1 A. M. on November 23, 1950, while persons who had been caught in a gambling raid were being booked, and had attempted to secure the release of one or more of them. He testified:

"A. Yes, and Mr. Schillizzie appeared. I knew Mr. Schillizzie, of course. I come from Garfield. I have known Mr. Schillizzie for a good many years. And he came into Police Headquarters on the second floor of the building and asked me to let some of the men go, that he would see to it that they would no longer engage in that kind of activity, that they were men that he knew, that it would help him considerably in the City if I could see my way clear to let the men go. Of course, I refused and went about my work. Understand, that all of these men are not too much help. There was a certain amount of confusion. I wanted to be sure that everything was done as efficiently as possible and I went about doing whatever work had to be done. Mr. Schillizzie kept following me and asking me on two or three occasions to let the men go—not all of them—there were certain ones that he was interested in. And I kept telling him I couldn't possibly let them go, they all had to be treated alike, I was holding them all, and I was fixing bail at $50 for each of the players and the actual operator at $1,000. Mr. Schillizzie kept asking me and I don't recall the number of times. It was several times. And I was becoming annoyed at his insistence and told him I couldn't possibly do it, I had conducted the raid, these men were under arrest and I would not let anybody go, they were all going to be treated alike. That was about the sum and substance of it."

At this hearing the defendant's superior, Chief Probation Officer Chandler of Bergen County, testified that the county

prosecutor attempted to question Schillizzie about the raid. The transcript of the interview with the prosecutor on Friday morning, November 24, 1950 which was introduced in evidence on the civil service hearing, is significant as to his attitude toward his work:

"Q. Mr. Schillizzie, we are inquiring into your conduct on the morning of the 23rd after a raid was made and a number of people arrested in Garfield, charged with gambling, and one person charged with maintaining a house where people resort for gambling. We are informed that you presented yourself at the Police Station and attempted to intercede for some of these people who were then under arrest. I want to ask you some questions about it. I want you to answer them truthfully, if you will, and I want to tell you that your conduct is being inquired into. If it happens that the evidence is such that it could be used as a basis for prosecution it will be used as such a basis, and you have no compulsion to speak unless you are willing to speak, and you certainly should not tell us anything except the entire truth in an effort to help us find out what the truth is.

Now, in view of those circumstances do you want to answer questions? A. No sir, I don't feel that it requires that much of my speaking.

Mr. Chandler: May I say something? I am suspending Mr. Schillizzie as of this minute.

Mr. Winne: That's all, if you said all you have got to say.

The Witness: I would like to discuss it further, Mr. Winne. I can't understand your attitude in having the statement taken from me on something that wasn't done with any intent, done with any prejudice.

Q. You have a free choice to make. You can either answer the questions we ask or not. I don't want you to argue with me about it. A. I'm not arguing. I want to know what my status is here.

Q. You know perfectly well you are a county employee, wearing a badge and we certainly have a right to expect you to answer truthfully any questions we ask about your conduct that has to do with the treatment of the people that are charged with criminal offenses and there is only one sensible thing for us to do and that is try to get your story before we determine what to do. Now, what else is there to say? You don't want to answer any questions. That is your privilege. There isn't anything else to be said unless you have something else to say. A. No sir. I have nothing else at this time. I can leave?

Mr. Winne: Yes, sir."

Schillizzie was discharged on November 30, 1950.

Before deciding the substantive issue on this appeal, a procedural point raised by the respondents must first be discussed.

## I.

The Department of Civil Service urges that the county judges are not entitled to pursue an appeal from the final determination of the Department for a variety of reasons. It is contended that they are state officers exercising state powers within the territorial jurisdiction of their counties and as such state officers they do not possess the capacity to contest the action of another agency of the State Government. It is also claimed that the judges of the Bergen County Court are not a legal entity and that they, therefore, have no authority to sue. Finally, it is maintained that they are not parties interested in this proceeding. The Department of Civil Service also asserts that the County of Bergen has no remedial interest in this matter. The mere payment of salaries of the probation office by the county, it is said, is not a sufficient basis for complaint by it because its responsibility to maintain the probation office remains unaffected by the outcome of this litigation.

It is discouraging to have such technicalities of procedure solemnly argued when this court has uniformly sought for seven years under the new Constitution to dispose of every case before it on the substantive merits of the controversy, all in an effort to prevent the decision of an important question of law affecting the essentials of civil service administration.

The responsibility for the successful administration of our probation services rests primarily on the county court judges, *N. J. S.* 2*A*:168-5. They are responsible for the appointment not only of the chief probation officer but also of all the probation officers who serve under him. While the chief probation officer in each county has general supervision of

probation work, it is "under the direction of the court." The statute further provides that "The chief probation officer may make such necessary rules and regulations with respect to the management anl conduct of the probation officers and other employees as may be authorized by the judge or judges of the county court." *N. J. S.* 2*A*:168–7. It is their responsibility to fix salaries at a level sufficient to recruit and retain qualified probation officers, *N. J. S.* 2*A*:168–8. They are responsible for the proper utilization of probation services in their county. The responsibility, imposed by the statutes on the county judges not only with respect to the appointment of probation officers but also with reference to probation work of the county generally, clearly gives them standing to prosecute this appeal. The probation services of a county are so distinctly an arm of the court not only in the enforcement of the criminal law but also on the civil side of the courts, *N. J. S.* 2*A*:168–3 and 13, that it is difficult to conceive of a more appropriate appointing power. In *Massett Building Co. v. Bennett,* 4 *N. J.* 53, 59, 61 (1950), we enumerated the various nonjudicial matters in which the Legislature had authorized the courts to act and found that the practice was justified by centuries of experience here and elsewhere. In these circumstances it would indeed be odd to find that the courts were precluded from acting in a matter so intimately concerned with the administration of justice. Nor is there any basis in reason or in the decided cases for the argument that the county judges cannot appeal a decision against them because they are not "an entity." If this were so, an appeal would lie in a county with one county judge, but not in a county where there are two or more county judges. Such a result does not command our respect. The people of Bergen County, moreover, have a very real interest in an effective probation department beyond the raising of money to support it. They are naturally and properly represented by the County of Bergen, although in this case, by reason of the appointing power granted to the county judges, the county is not a necessary party.

## II.

Here, as in every case coming before our courts, we are primarily interested in the disposition of the appeal on the substantive merits of the case.

■ On the merits, we are of the opinion that the Department of Civil Service has misapprehended its function in admitting persons to its examinations and in certifying lists thereafter. It is undoubtedly true that when a disabled veteran is properly certified as eligible for appointment to a position by the Chief Examiner and Secretary of the Department of Civil Service, the appointing authority has no freedom of choice among the eligible, but must appoint that person, *R. S.* 11:6–2(e); 11:27–3, 4 and 5; *Bergen County v. Civil Service Commission*, 137 *N. J. L.* 688 (*E. & A.* 1948), but where, as here, a person was improperly certified on a list it is unnecessary to determine any priority on the list. In this case we never reach the question of priority; the issue is more immediate.

The Chief Examiner and the Secretary of the Department are authorized by statute to appoint *only eligible persons*. *R. S.* 11:6–2(e) provides:

"The chief examiner and secretary shall also:

\*       \*       \*       \*       \*       \*       \*       \*

(e)  \*  \*  \*  certify the names of persons eligible for employment \*  \*  \*  upon the requests from the appointing authorities. \*  \*  \*"

■ The Constitution directs that appointments and promotions in the civil service shall be according to merit and fitness to be ascertained, "as far as practicable," by examination, *Article* VII, *Section* I, *par.* 2.

"\*  \*  \*  The important social objectives of the constitutional and statutory provisions are evident; they are designed to aid in obtaining effective public service through personnel selected on the basis of proper standards and qualifications rather than upon political or other extraneous considerations. \*  \*  \*"  *Falcey v. Civil Service Commission*, 16 *N. J.* 117, 122 (1954).

The Chief Examiner and Secretary when necessary to meet the needs of the public service is directed to hold examina-

tions to establish a list of eligibles, *R. S.* 11:9–1. It is also provided that the tests shall be competitive and free and

"except as to such limitations as to age, residence, health, habits, character, sex and other qualifications as may be considered desirable by the chief examiner and secretary and specified in the public announcement of the test, open to citizens who may be *lawfully* appointed to any position * * * for which they are held. * * *" (Emphasis supplied.) *R. S.* 11:9–2.

The purpose of the tests is to fairly determine the qualifications and fitness of the person tested actually to perform the duties of the position to which he seeks appointment. To this end the permissive exceptions just quoted from *R. S.* 11:9–2 are employed as the means of eliminating from consideration all those who do not meet the specific standards required for the particular job in question.

But that is not all. By *R. S.* 11:9–6:

"The chief examiner and secretary may reject the application of a person for admission to a test for establishing an employment list, or refuse to test an applicant or certify the name of an eligible, who:

a. Lacks the established qualification requirements for the position for which he applies or has been tested; or

b. Is physically unfit to perform effectively the duties of the position in which he seeks employment; or

c. Is addicted to the habitual use of drugs or intoxicating liquors; or

d. Has been guilty of a crime or infamous or notoriously disgraceful conduct; or

e. Has been dismissed from the public service for delinquency; or

f. Has made false statements of a material fact or practiced or attempted to practice any deception or fraud in his application, in his tests or in securing his eligibility or appointment. * * *"

See also *R. S.* 11:23–2. While literally the language of this section is permissive, it must be given a mandatory construction to eliminate from all examinations and from all lists persons who fall within the six proscribed categories set forth in the statute. If this were not so, then both the constitutional directive to appoint according to merit and fitness and the statutory requirements herein quoted could

be overlooked with impunity. Not only does the tenor of the section itself require such construction, but any other interpretation would render it unconstitutional as involving an excessive delegation of authority amounting in effect to the exercise of a permissive dispensing power.

██ The conduct of the defendant at the Garfield police station and his refusal to answer questions with reference thereto were facts before the Department of Civil Service at the time it determined to permit Schillizzie to take the examination. When the Department acquires such knowledge requiring action under the statutes governing it, it must act in accordance with such statutes. The record of the defendant so obviously indicates conduct violative of subsections (d) and (e) of *R. S.* 11:9–6 as to have required his elimination from the eligibles as soon as it became known to the Department of Civil Service, just as the Chief Examiner and Secretary should never have admitted him to the examination. The Department of Civil Service not only paid no attention to the requirements of the Constitution and the statutes herein quoted, but it ignored the statutes and the practice governing the work of probation officers. It is a matter of common knowledge that the sentences of the judges in criminal cases are greatly influenced by the confidential reports of probation officers which are not subject to cross-examination or to public scrutiny; see *N. J. S.* 2*A* :168–3. Likewise in civil matters the court relies very largely on the reports of probation officers in the exceedingly delicate matter of awarding the custody of infants in matrimonial disputes; see *N. J. S.* 2*A* :168–13, *R. R.* 4 :98–8. The effectiveness of the decisions of the courts in these matters depends largely upon the skill, the judgment and the integrity reflected in the probation reports. The effectiveness of a probation report would be totally destroyed if the judges who rely thereon do not have implicit confidence in the character and ability of the person preparing it. In view of Schillizzie's record the judges of Bergen County could not be expected to have such confidence in any reports which he might submit. This situation was known to the Department of Civil Service and

they erred in not acting on it and in failing to comply with the statutes herein quoted.

The order of the Department of Civil Service of December 7, 1954 placing the name of the defendant on the eligible list for appointment as a probation officer of Bergen County is set aside and the defendant's name is stricken from the list.

HEHER, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.