COUNTY OF BERGEN, PLAINTIFF-APPELLANT, v. PORT OF NEW YORK AUTHORITY AND JERSEY SCREEN AND STORM WINDOW COMPANY, INC., DEFENDANTS-RESPONDENTS.

Argued February 23, 1960—Decided May 9, 1960.

*Mr. Milton T. Lasher,* Bergen County Counsel, argued the cause for appellant.

*Mr. Francis A. Mulhern* argued the cause for respondent, The Port of New York Authority (*Mr. Francis A. Mulhern,* attorney; *Mr. Sidney Goldstein,* General Counsel to The Port of New York Authority, of the New York Bar, and *Miss Isobel Muirhead,* of counsel).

The opinion of the court was delivered by

WEINTRAUB, C. J. The County of Bergen appeals from a judgment determining that its complaint fails to set forth a claim for relief. We certified the appeal on our motion before the Appellate Division acted upon it.

Defendant, The Port of New York Authority, is a body corporate and politic created by a compact between the States of New Jersey and New York (*R. S.* 32:1-4) with the consent of the Congress of the United States. (42 *Stat.* 174). It is an agency of both states to further their common interests within the jurisdiction committed to it. *Port of New York Authority v. Weehawken Tp.,* 27 *N. J. Super.* 328, 333 (*Ch. Div.* 1953), reversed for reasons not here pertinent, 14 *N. J.* 570, 575 (1954).

The complaint alleges the Port Authority is authorized by *Chapter* 81 of the *Laws of* 1949 (*N. J. S. A.* 32:1-35.18 *et seq.*) to acquire real property for the air terminal known as Teterboro Airport in the Boroughs of Teterboro, Moonachie and Carlstadt in the County of Bergen; that pursuant to said statute and in accordance with *Chapter* 43 of the *Laws of* 1947 (*N. J. S. A.* 32:1-35.1 *et seq.*) the Port Authority acquired for the Teterboro Airport a plot described as Block 92 on the official assessment map of the Borough of Moonachie; that the Port Authority constructed an industrial building on said plot and leased it to defendant Jersey Screen and Storm Window Company, Inc. for a term of 20 years at an annual rental of $110,390 for the manufacture of metal windows and doors. This lease, the complaint charges, is unrelated to any air terminal purpose, and unless it is judicially declared that the Port Authority is without power to erect and lease buildings for

such uses, the Port Authority "may proceed with the construction and leasing of other buildings on its lands in a fashion similar to that described * * * using its governmental franchises to engage in private enterprises in direct competition with private capital and privately owned property and circumventing the tax laws of this State, thereby causing great loss and detriment to the County of Bergen and to the municipalities and inhabitants thereof and to the owners of property located therein." The complaint demands judgment declaring (1) the Port Authority lacks legal authority "to make leases of the type" mentioned above, and (2) that *section* 5 of *Chapter* 43 of the *Laws of* 1947 (*N. J. S. A.* 32 :1–35.5) "insofar as it may purport to grant tax exemption" to the Port Authority with respect to property in such circumstances is unconstitutional.

The pivotal question is whether the county has an interest sufficient to support this action. The Uniform Declaratory Judgments Act is designed "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *N. J. S.* 2A :16–51. A person (including a municipal corporation) "whose rights, status or other legal relations are affected by a statute * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder." *N. J. S.* 2A :16–53. This enumeration, *N. J. S.* 2A :16–52 provides, does not exhaust the broad authority in the act "to declare rights, status and other legal relations." In essence, a plaintiff must have an interest in the subject matter in order to maintain a declaratory judgment action. This requirement reflects the wholesome general rule that litigation shall not be maintained by strangers to a controversy. *Cf. New Jersey Turnpike Authority v. Parsons, 3 N. J.* 235, 240 (1959); *New Jersey Bankers Ass'n v. Van Riper, 1 N. J.* 193, 196 (1948). The trial court could find no interest in the county either in its own right or as a representative of others. We agree.

The complaint is drawn in most general terms. It does not specifically identify the right or legal relation the county seeks to protect. In presenting its argument before us the county expanded upon the subject which however remains quite obscure.

The complaint refers to the subject of exemption from taxation. It does not however seek to compel an assessment or to obtain an adjudication that the specific property leased by the Port Authority to the co-defendant is taxable. The prayer is that the statute be declared unconstitutional if it purports to grant exemption in the general circumstances alleged in the complaint and thus the issue is but obliquely suggested. Defendants deny the county is at all interested since its budgetary needs must be met by assessments by the taxing districts and its revenue does not depend upon the amount of taxable ratables. The county concedes this is true but argues that in determining the amount of its budget it cannot realistically ignore the total tax rate and hence is concerned with the amount of the ratables because of the impact thereof upon the dollar rate. It further points out that its borrowing capacity is hinged to the amount of ratables. *R. S.* 40:1–14 and 82; 40:2–38 and 49. In either aspect, the county's interest is indirect and rather remote. The same observation perhaps could be made with respect to a municipality's interest in the subject of exemption, but, as defendants point out, the Legislature placed the official responsibility in the municipality rather than in the county. It is the assessor of the municipality who makes the assessment. *N. J. S. A.* 54:4–12 and 23. Appeals are authorized to be prosecuted only by taxpayers and taxing districts. *N. J. S. A.* 54:3–21. Omitted property may be added by the county board on its own motion or upon the complaint of the collector of taxes, any taxpayer, or the taxing district or its governing body. *N. J. S. A.* 54:4–63.13. The county thus is not among those legislatively determined to be parties in interest.

The county however urges the present situation is exceptional since the Port Authority is empowered by *section 5, Chapter* 43 of the *Laws of* 1947 (*N. J. S. A.* 32:1–35.5) to agree with municipalities "for the payment of fair and reasonable sums  *  *  *  annually in accordance with legislation heretofore adopted by the two States, to the end that such municipalities may not suffer undue loss of taxes and assessments." Hence, the county speculates, the borough may be induced by such reward to forego a claim of non-exemption. Thus, it is argued, the statute last cited removes the incentive to the municipality to tax Port Authority property. But, we are informed, the Borough of Moonachie has assessed the property, and there is no charge of a plan to scuttle the assessment. It will be time enough to evaluate the county's standing to maintain a suit when and if the hypothetical situation should come to pass.

At any rate, if despite the lack of legislative authorization the county could be found to have a status to litigate an exemption, we are satisfied the present action is not the appropriate vehicle. As we have already said, we are not at all sure the complaint has that objective. The county did not join the Borough of Moonachie despite the obvious fact that it would be a necessary party to a suit for a declaration upon that matter. *N. J. S.* 2*A*:16–56. Although, if we misconceive the nature of the interest the county here asserts, this difficulty could be met by adding the borough as a party, still we see no reason to by-pass the administrative process devised by the Legislature to deal with the taxation of property. *Central Railroad Co. v. Neeld,* 26 *N. J.* 172 (1958), *certiorari* denied 357 *U. S.* 928, 78 *S. Ct.* 1373, 2 *L. Ed. 2d* 1371 (1958). The borough has assessed the property, and hence the issue is now in the appropriate forum for findings of fact and initial determination.

Next the county cites *R. S.* 40:23–5 which empowers its board of freeholders to "appropriate such sums as it shall deem necessary for the purpose of advertising in newspapers, magazines or otherwise, either within or without the

state, the advantages and attractions of the county for residence and business purposes." It seems to be urged the county is thereby constituted the guardian of the public weal with respect to anything and everything which may reflect upon "the advantages and attractions of the county for residence and business purposes." Quite obviously the Legislature made no such grant. Broad powers in that regard are vested in municipalities rather than the county. Authority to appropriate moneys to advertise hardly embraces authority to appropriate money to litigate every situation which may affect the subject. Local ordinances of sundry types bear upon the pursuit of commercial and residential activities. Surely a county may not attack local exercises of the police power merely because they disserve its conception of what the scene should be. To put it in other terms, the county is authorized to advertise the advantages and attractions as they are rather than to determine what those advantages and attractions shall be. It may influence the advantages and attractions solely in the exercise of other powers vested in it by statute. We cannot under the rule of liberal construction, *R. S.* 40:16–1; *N. J. Const. Art.* IV, § 7, *par.* 11, find the Legislature intended to transfer the police power of municipalities to the county simply because it authorized the county to advertise. Indeed municipalities too are authorized to appropriate moneys "for advertising the advantages of the municipality." *R. S.* 40:48–1 (30).

Actually the complaint does not allege the Port Authority has done anything to impair those advantages and attractions. The sole allegation is that the Port Authority may use its governmental franchises "to engage in private enterprises in direct competition with private capital and privately owned property and circumventing the tax laws of this State, thereby causing great loss and detriment to the County of Bergen and to the municipalities and inhabitants thereof and to the owners of property located therein." It is not charged the lease to the co-defendant is at a rental below

market value or that the Port Authority plans to undercut the market to the disadvantage of a competitor of a lessee. We of course will not assume on our own that the Port Authority intends to embark upon a program to impair the very commerce it was created to serve.

Hence we cannot find any charge of actual or threatened hurt to any property or political interest held by or entrusted by law to the county. What the complaint really seeks to do is to vindicate the general public interest upon an allegation that another agency of government, the Port Authority, is exceeding its statutory powers. A taxpayer concededly may sue to that end as the representative of the public. The county claims that it may represent the public's representative, that is, the taxpayer, and thus assume the role of defender of the general public interest. We think it may not.

The county cites *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433, 474 (1952), *certiorari* denied 344 *U. S.* 838, 73 *S. Ct.* 25, 97 *L. Ed.* 652 (1952) for the proposition that the members of the board of freeholders stand in a fiduciary relationship to the people whom they serve and as "fiduciaries and trustees of the public weal they are under an inescapable obligation to serve the public with the highest fidelity." But *Driscoll* did not suggest the board is trustee of the total public weal. Rather its fiduciary obligation relates to the portion of the public authority committed to it and the properties and funds it receives for its assigned role. Far from suggesting the county thereby becomes the champion of any and all public interests, the opinion points out that the Governor and Attorney General are the official vindicators of the public right (at *page* 476 of 8 *N. J.*). See also *Public Service Coordinated Transport v. State,* 5 *N. J.* 196, 208 (1950).

To express it in other terms, each governmental entity is *parens patriae* within the orbit of its own political responsibility. Thus it has been held that the United States, rather than the State, represents the citizens in their relations to the Federal Government. *State of Georgia v. Pennsylvania*

*R. Co.,* 324 *U. S.* 439, 446, 65 *S. Ct.* 716, 89 *L. Ed.* 1051, 1057 (1945). So also it has been held that the Interstate Commerce Commission rather than a city represents the public including the residents of the municipality. *Jersey City v. United States,* 101 *F. Supp.* 702 (*D. C. D. N. J.* 1950); see *County Board of Arlington County, Virginia v. United States,* 101 *F. Supp.* 328, 332 (*D. C. E. D. Va.* 1951). To the same effect with respect to a state commission, see *City of Wheaton v. Chicago, A. & E. Ry. Co.,* 3 *Ill. App. 2d* 29, 120 *N. E. 2d* 370 (*App. Ct.* 1954); *Consolidated Gas Co. v. Newton,* 256 *F.* 238 (*D. C. S. D. N. Y.* 1919), affirmed 260 *F.* 1022 (2 *Cir.* 1919), reversed on procedural grounds 253 *U. S.* 219, 40 *S. Ct.* 511, 64 *L. Ed.* 870 (1920); *Morrell v. Brooklyn Borough Gas Co.,* 231 *N. Y.* 405, 132 *N. E.* 130 (*Ct. App.* 1921); cf. *Board of Public Utility Commissioners v. Sheldon,* 95 *N. J. Eq.* 408, 411 (*Ch.* 1924); but cf. *State ex rel. City of St. Louis v. Public Service Commission,* 317 *Mo.* 815, 296 *S. W.* 790, 794 (*Sup. Ct.* 1927). Thus it is the Port Authority rather than the county that represents the residents of the Port District with respect to the public function entrusted to it.

The county has not been expressly constituted the guardian of its citizens in their relations with the bi-state agency. Nor is that authority implicit in the nature of a county. Historically the county was solely a subdivision of the State constituted to administer state power and authority. It differed from a municipality in that, whereas a municipality was created upon the request or with the consent of the inhabitants to act both as a body politic on behalf of the State and also as a representative of the inhabitants for their local convenience in its so-called corporate or proprietary capacity, the county on the other hand was created by the State without regard to local wishes and solely to serve as a body politic. 14 *Am. Jur., Counties,* §§ 3–4, *pp.* 185–187; *Sacramento County v. Chambers,* 33 *Cal. App.* 142, 164 *P.* 613, 614 (*Dist. Ct. App.* 1917); *Cook County v. City of Chicago,* 311 *Ill.* 234, 142 *N. E.* 512, 513, 31 *A. L. R.*

442 (*Sup. Ct.* 1924) ; *State ex rel. Johnson v. Gage County,* 154 *Neb.* 822, 49 *N. W.* 2d 672 (*Sup. Ct.* 1951) ; *Overholser v. National Home for Disabled Soldiers,* 68 *Ohio St.* 236, 67 *N. E.* 487, 489, 62 *L. R. A.* 936 (*Sup. Ct.* 1903) ; *Hartness v. Allegheny County,* 349 *Pa.* 248, 37 *A.* 2d 18, 19 (*Sup. Ct.* 1944) ; *State ex rel. Bare v. Schinz,* 194 *Wis.* 397, 216 *N. W.* 509 (*Sup. Ct.* 1927). No doubt the line of demarcation has blurred to some extent, Monograph, *Home Rule,* 2 *Proceedings of Constitutional Convention of* 1947, *pp.* 1729, 1743, and today a county is assigned functions which in strictness may be deemed to be corporate and hence historically the subject of grant to municipalities. Indeed our statute constitutes the county a body both politic and corporate. *R. S.* 40 :18–1. Nonetheless, the county's powers are only those granted to it, and the municipality remains the repository of the broad police power over local affairs. The role of the county is still relatively more restricted. It surely does not embrace a guardianship of the public right to prevent other agencies of government from exceeding their powers.

We are not concerned with the status of a municipality or other unit of local government to protect its public property such as roads or public parks, *State by State Highway Com'r. v. Cooper,* 24 *N. J.* 261, 275 (1957), *certiorari* denied 355 *U. S.* 829, 78 *S. Ct.* 41, 2 *L. Ed.* 2d 42 (1957) ; or to recover profits or illegal gains extorted by its agents, *Jersey City v. Hague,* 18 *N. J.* 584 (1955) ; or to enforce for the benefit of its citizens the obligations of public utilities arising out of contracts made with the municipality or under its ordinances granting a franchise, *City of Bridgeton v. The Bridgeton and Millville Traction Co.,* 62 *N. J. L.* 592, 601 (*Sup. Ct.* 1899) ; *Boonton v. Boonton Water Co.,* 69 *N. J. Eq.* 23, 24 (*Ch.* 1904), affirmed *Mayor, etc., Town of Boonton v. United Water Supply Co.,* 70 *N. J. Eq.* 692 (*E. & A.* 1906) ; or to appropriate moneys to address the Legislature or to publicize its position on proposals for constitutional changes affecting its revenue or political powers,

*City Affairs Committee v. Jersey City,* 134 *N. J. L.* 180
(*E. & A.* 1946); *In re Carrick,* 127 *N. J. L.* 316 (*Sup. Ct.*
1941); *cf. Citizens to Protect Public Funds v. Board of
Education,* 13 *N. J.* 172 (1953); or to protect its property,
revenue or political power against power asserted by another
agency, *Washington Tp. v. Village of Ridgewood,* 26 *N. J.*
578 (1958); *State ex rel. Board of Health of Borough of
East Paterson v. New Jersey Highway Authority,* 26 *N. J.*
497 (1958); *Town of Bloomfield v. New Jersey Highway
Authority,* 18 *N. J.* 237 (1955); *Nolan v. Fitzpatrick,* 9
*N. J.* 477 (1952); or to attack utility charges in its capacity
as a ratepayer, *Camden County v. Pennsauken Sewerage
Authority,* 15 *N. J.* 456 (1954). In all such cases, the local
governmental body acts with respect to property or power
it holds for the benefit of its inhabitants. See also *Vander-
wart v. Department of Civil Service,* 19 *N. J.* 341, 347
(1955) in which judges of the County Court were held to
be proper parties to appeal from the action of the civil service
commission relating to the appointment of probation officers
on the ground that the official responsibility of the judges
included the administration of the probation service. Here,
however, there is no infringement of the proprietary in-
terests of the county or intrusion upon its assigned political
role. Rather the county seeks to sue on behalf of the general
public to determine the ambit of the authority of another
agency of the State. As we have said, the official role thus
sought to be claimed belongs to the Governor and to the
Attorney General. It may be exerted by another agency of
the State only if the Legislature so authorizes. The issue is
not a technical one of pleading or practice. It goes to the
essence of the relationship among governmental bodies. To
permit contests among them solely to vindicate the right
of the public with respect to jurisdictional powers of other
public bodies is to invite confusion in government and a
diversion of public funds from the purposes for which they
were entrusted. The fear is not idle or theoretical. Prac-
tical politics being what they are, one can readily foresee

lively wrangling among governmental units if each may mount against the other assaults now permissible upon the initiative of the Governor, the Attorney General or a taxpayer or citizen to vindicate the public right.

We know of no decision in our State which supports the county's claim to the role it here assumes. Nor can we find significant support elsewhere. On the contrary, the out-of-state cases we have already cited go the other way. So it has been held that a municipality may not attack the actions of other state agencies solely on the thesis that it represents its citizen taxpayers. *State ex rel. City of Sheboygan v. County Board of Supervisors,* 194 *Wis.* 456, 216 *N. W.* 144 (*Sup. Ct.* 1927); *City of Appleton v. Bachman,* 197 *Wis.* 4, 220 *N. W.* 393 (*Sup. Ct.* 1928); *City of Racine v. Levitan, State Treas.,* 196 *Wis.* 604, 220 *N. W.* 398, 221 *N. W.* 109 (*Sup. Ct.* 1928). In *City of Appleton* the city advanced an argument much resembling the theme of the county here in asserting handicaps indirectly ensuing from the actions of the Port Authority. The Wisconsin court concluded (at *page* 398 of 220 *N. W.*) that "While the city has many powers, duties, and functions, it is not made the guardian of its citizens in their relations with the state and county." And in *City of Racine,* the Wisconsin court characterized a spate of litigation *parens patriae* as "a curious development" and held (at *page* 399 of 220 *N. W.*) "It is no part of the business of a city to censor and supervise the activities of its creator, the state." See also *City of Georgetown v. The Alexandria Canal Co.,* 12 *Pet.* 91, 99, 9 *L. Ed.* 1012, 1016 (1838); *State ex rel. Chilton County v. Butler,* 225 *Ala.* 191, 142 *So.* 531 (*Sup. Ct.* 1932); *Park v. Modern Woodmen of America,* 181 *Ill.* 214, 54 *N. E.* 932, 938 (*Sup. Ct.* 1899); *City of Chelsea v. Treasurer and Receiver General,* 237 *Mass.* 422, 130 *N. E.* 397 (*Sup. Jud. Ct.* 1921); *County of Wayne v. Michigan Public Service Comm.,* 343 *Mich.* 144, 72 *N. W.* 2d 109 (*Sup. Ct.* 1955).

It is difficult to foresee all eventualities. It may be that situations will arise in which despite the absence of an intru-

sion upon the property or political powers of a county or municipality, it may appropriately speak with respect to some hurt experienced generally by its inhabitants. We need not and do not foreclose that possibility. It is enough for present purposes to say that a county may not sue to determine the jurisdiction of another political agency of the State solely to vindicate the general public right.

The judgment is accordingly affirmed.

JACOBS, J. (dissenting). Our old judicial system was enmeshed in technicalities and its judges freely disposed of cases on procedural grounds which had no relation to justice or the merits of the controversy between the parties. Those who in 1948 originally implemented our new judicial system were fully aware of this and they quickly fixed, as one of their high goals, the elimination of the "archaic procedural requirements which had so often frustrated just and expeditious determinations on the ultimate merits." See *Tumarkin v. Friedman,* 17 *N. J. Super.* 20, 21 (*App. Div.* 1951), certification denied 9 *N. J.* 287 (1952) ; *Ciocca v. Hacker,* 4 *N. J. Super.* 28, 33 (*App. Div.* 1949). They zealously set about their task and in 1951 Professor Schnitzer was able to record that "almost every reported case was decided upon the merits." See *Schnitzer, "Civil Practice and Procedure,"* 6 *Rutgers L. Rev.* 351 (1951). In 1955 Chief Justice Vanderbilt, while summarily rejecting an objection to the standing of the County of Bergen and its county judges to review an order of the Department of Civil Service, noted that it was "discouraging to have such technicalities of procedure solemnly argued when this court has uniformly sought for seven years under the new Constitution to dispose of every case before it on the substantive merits of the controversy." See *Vanderwart v. Department of Civil Service,* 19 *N. J.* 341, 347 (1955). It seems safe to say that if he were here now he would be greatly saddened to observe that not only are such technicalities of procedure

still being solemnly argued but, worse yet, they are being embraced by a majority of the court.

The controversy between the County of Bergen and the Port of New York Authority involves important legal issues which should, in the public interest, be determined justly and expeditiously; indeed it is difficult to understand why a public body such as the Port of New York Authority, instead of extending its efforts towards obtaining an early determination on the merits, has chosen to seek to avoid it on procedural grounds. Apparently the Port of New York Authority is constructing a building in the Borough of Moonachie, County of Bergen, which it has leased for 20 years to a private corporation for the manufacture of metal windows and doors and is claiming that under *L.* 1947, *c.* 43, § 5 (*N. J. S. A.* 32:1–35.5) it is not required to pay taxes or assessments on the leased property. The county contends (1) that the Port of New York Authority has no legal power to make the aforementioned lease and (2) that if *L.* 1947, *c.* 43, § 5 purports to grant a tax exemption on the leased property it is unconstitutional and void. The county might well have instituted a proceeding in lieu of prerogative writ (*R. R.* 4:88) instead of a proceeding under the Uniform Declaratory Judgments Act (*N. J. S.* 2A:16–50 *et seq.*) but this should be of no present concern for the substance of the controversy remains the same regardless of the form of the action. *Cf. Carls v. Civil Service Commission of N. J.,* 17 *N. J.* 215, 220 (1955), where the court noted that "refusal to determine the ultimate merits because the appellants mistakenly proceeded by petition for declaratory judgment under *Rule* 3:81–10 would be unjust and would do violence to the very purposes underlying our new judicial system." While the county might well have joined the Borough of Moonachie as a party defendant, this likewise should be of no present concern, for while failure to join the borough might warrant a suitable order of joinder in the Law Division, it would not justify dismissal of the county's action. *Cf. R. R.* 4:34. And the doctrine of

exhaustion of administrative remedies, though mentioned by the majority, would appear to have no significant bearing here since no administrative expertise whatever is involved and the issues sought to be raised by the county are strictly legal and constitutional in nature. See *Levitt & Sons, Inc. v. Division Against Discrimination, etc.,* 31 *N. J.* 514, 523 (1960); *Nolan v. Fitzpatrick,* 9 *N. J.* 477, 484 (1952); *Ward v. Keenan,* 3 *N. J.* 298, 302 (1949).

The majority evidently takes the position that the action was properly dismissed because the county does not have sufficient standing or interest in the controversy. But, as Justice PROCTOR's dissenting opinion points out, and as indeed appears from a discerning reading of the majority opinion itself, the county is in no realistic sense an interloper or stranger but on the contrary is seeking to protect the legitimate interests of itself and its people who are "naturally and properly represented by the County." See *Vanderwart v. Department of Civil Service, supra,* 19 *N. J.,* at *page* 348; *Nolan v. Fitzpatrick, supra,* 9 *N. J.,* at *page* 484; *cf. Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433, 474 (1952), *certiorari* denied 344 *U. S.* 838, 73 *S. Ct.* 25, 97 *L. Ed.* 652 (1952), rehearing denied 344 *U. S.* 888, 73 *S. Ct.* 181, 97 *L. Ed.* 687 (1952); *Abbott v. Beth Israel Cemetery Ass'n of Woodbridge,* 13 *N. J.* 528, 541 (1953).

When dealing with problems of standing and other procedural matters, the pervading judicial attitude perhaps plays a more important part than the formal court rules. See *Meszaros v. Gransamer,* 23 *N. J.* 179, 189 (1957). Since the inception of our new system and until today the judicial attitude has been a very wholesome one, resulting in the rejection of many attacks on the standing of plaintiffs who sought to obtain determinations as to the legality of the conduct of public officials and public agencies. Thus in *Haines v. Burlington County Bridge Commission,* 1 *N. J. Super.* 163 (*App. Div.* 1949) the court entertained proceedings which attacked the acquisition by the Burlington County Bridge Commission of toll bridges across the Dela-

ware River between points in Burlington County and Pennsylvania; it overruled the contention that since the tax burden of the plaintiffs would not be increased they could not maintain the action as taxpayers and citizens of the County of Burlington and pointed out that "the interests of complete and effective justice to the public as well as the parties" required that the proceedings be heard and determined on the merits. Later cases have adhered to the approach in *Haines* and have sustained the right of various taxpayers to institute proceedings designed to determine whether challenged conduct by public officials and public agencies was lawful and proper. See *Koch v. Borough of Seaside Heights,* 40 *N. J. Super.* 86, 93 (*App. Div.* 1956), affirmed 22 *N. J.* 218 (1956); *cf. Garrou v. Teaneck Tryon Co.,* 11 *N. J.* 294, 302 (1953); *Salomon v. Jersey City,* 12 *N. J.* 379, 383 (1953); *Kozesnik v. Montgomery Twp.,* 24 *N. J.* 154, 177 (1957).

When dealing with proceedings by plaintiffs other than taxpayers, our courts have displayed comparable liberality in rejecting attacks on their standing, particularly where the public interest coincided with the desire of the plaintiffs to obtain just and expeditious determinations on the merits. Thus in *New Jersey State Bar Ass'n v. Northern New Jersey Mortgage Associates,* 22 *N. J.* 184 (1956), it was held that the State Bar Association had standing to obtain a determination as to whether the conduct of the defendants constituted the unlawful practice of the law; in *Greenspan v. Division of Alcoholic Beverage Control,* 12 *N. J.* 456 (1953), it was held that a dealers association had standing to attack an allegedly illegal issuance of a liquor license; in *Jersey City v. Hague,* 18 *N. J.* 584 (1955), it was held that the City of Jersey City had standing to bring proceedings against former city officials who allegedly had extorted moneys from city employees; in *Driscoll v. Burlington-Bristol Bridge Co., supra,* it was held that the Governor and Attorney General had standing to attack the acquisition of bridges by the Burlington County Bridge Commission; in *Abbott v. Beth*

*Israel Cemetery Ass'n of Woodbridge, supra,* it was held that the State Highway Commissioner, as a representative of the people of the State, had standing to bring a proceeding to determine whether land being condemned by him was eligible or authorized for cemetery use; in *Vanderwart v. Department of Civil Service, supra,* the standing of county judges, and the county itself as representative of the people of the county, was upheld in an action relating to the appointment of a county probation officer; and in *Nolan v. Fitzpatrick, supra,* the court, in dealing with the requisition of funds by the Boulevard Commissioners of the County of Hudson, remarked that the "defendant board of chosen freeholders, like any taxpayer within the county, has the standing to attack the annual requisition directly in the courts either because of the illegality of any item therein or on the ground that any item is excessive or unnecessary." 9 *N. J.,* at *page* 484.

Law should be based on reason and I know of no sound reason which would in any wise justify precluding the county from obtaining determinations on the legal issues it has sought to raise. The majority suggests that sustaining the county's standing to sue would "invite confusion" but this is difficult to follow in view of the acknowledged right of an individual taxpayer to maintain the action. The majority also suggests that there would be "a diversion of public funds from the purposes for which they were entrusted." The county's action was instituted through its regularly engaged county counsel and so far as appears there would be no substantial expenditure of county funds; furthermore in no fair or just sense could it be said that the county's maintenance of a proceeding challenging the legality of the Port of New York Authority's conduct within the county was not in fulfillment of the county's public functions; on the contrary its action was in faithful discharge of its responsibilities and truly advanced the public interest. See *Elizabeth Federal Savings & Loan Ass'n v. Howell,* 24 *N. J.* 488 (1957) where the court, in sustaining the

standing of competitors to challenge an order of the Commissioner of Banking and Insurance permitting the opening of a branch bank, quoted with full approval these remarks by Professor Schwartz:

" 'The courts, in holding, as they sometimes do, that someone like a competitor or a consumer has no standing, have lost sight of the overriding need in our system—to make sure that someone shall in fact be able to secure review of administrative action. It is only if this need is satisfied that the principle of administrative legality can truly be enforced. It is in the interest of the community as a whole that illegal agency action be not left untouched. It is for the judiciary to vindicate this interest by ensuring that there are no unnecessary obstacles in the path of those seeking to challenge the legality of administrative action. To construe the standing requirement as our courts sometimes do is to place an unnecessary obstruction on the road of justice.' " 24 N. J., at page 502.

See *Frank v. Clover Leaf Park Cemetery Ass'n*, 29 *N. J.* 193, 209 (1959).

In *Al Walker, Inc. v. Borough of Stanhope*, 23 *N. J.* 657 (1957), the court recently pointed out that in our State, perhaps more than any other, legal proceedings have been made available as safeguards against "wrongful official action." There an attack on a municipal ordinance regulating house-trailers was brought by a plaintiff who was neither a taxpayer nor citizen of the municipality but was a dealer in house-trailers with a place of business in another municipality. In rejecting an objection to the plaintiff's standing the court cited the *Haines* doctrine and its liberality in sustaining the standing of a plaintiff, particularly where such approach coincides with the public interest in having an early and dispositive judicial determination of the legality of legislative or administrative action; in concluding its opinion the court made the following comments which bear repetition here:

"We are satisfied that, under the particular circumstances presented in the instant matter, the plaintiff may fairly be deemed to have a sufficient standing to maintain its action. There has been real and substantial interference with its business and the serious legal questions it has raised should, in the interest of the public as

well as the plaintiff, be passed upon without undue delay. We are not disturbed by the Borough's spectre that continued logical liberalization of the standing requirement might bring a flood of litigation which would tax our judicial facilities and unduly burden our governmental subdivisions. Justice Holmes long ago pointed out that experience rather than logic is the life of the law—there should be little doubt as to this court's capacity to deal fairly and effectively with the suggested eventuality. In the meantime, justice would appear to dictate that the plaintiff be afforded an opportunity to be heard on the merits of the claim it has been diligently seeking to assert since the institution of its action in the Law Division." 23 N. J., at *page* 666

I would reverse and remand the cause for further proceedings in the Law Division.

PROCTOR, J. (dissenting). I must dissent, as it is my belief that the County of Bergen has a sufficient interest to maintain the present action.

All the assessed property in Bergen County contributes to the support of the county government. If the use of tax-exempt Port Authority property for private rental is unlawful, then the removal of that property from the assessment rolls unlawfully reduces the amount of property liable for contribution, and distributes the burden of contribution unfairly throughout the county.

It is obvious that Bergen County's annual budget is determined with regard to the amount of property liable for contribution. Surely a board of freeholders, sensitive to its duties and the welfare of the county's inhabitants, cuts its budgetary cloth to the pattern fixed by the property available for taxation. Therefore, it seems to me unrealistic for the majority to assert that the county's interest in protecting the assessment rolls from unlawful reduction is "indirect and rather remote." It is conceded that any taxpayer in Bergen County, with his minute economic stake in the present controversy, would have standing to sue. Why, then, should the county, whose stake is cumulative of every taxpayer, and whose ability to distribute the cost of litigation is similarly cumulative, not have the same standing?

This court has recognized that a county board of freeholders, "like any taxpayer within the county," has standing to obtain judicial relief from unlawful intrusion by another public body upon the county's revenues. *Nolan v. Fitzpatrick,* 9 *N. J.* 477, at *page* 484 (1952). In the interests of the public as well as the plaintiff the serious legal questions raised by this case should be disposed of on their substantive merits without undue delay. *Cf. Al Walker, Inc. v. Borough of Stanhope,* 23 *N. J.* 657 (1957); *Vanderwart v. Department of Civil Service,* 19 *N. J.* 341 (1955).

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, FRANCIS, HALL and SCHETTINO—5.

*For reversal*—Justices JACOBS and PROCTOR—2.