77 N.J. Super. 459 (1962)
187 A.2d 10
JAMES J. BINGHAM, APPELLANT,
v.
DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, HYMEN SIEGENDORF AND SIDNEY ZISLIN, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1962.
Decided December 17, 1962.
*461 Before Judges CONFORD, GAULKIN and KILKENNY.
*462 Mr. Max A. Boxer argued the cause for appellant.
Mr. Martin Klughaupt argued the cause for respondents Hymen Siegendorf and Sidney Zislin.
The opinion of the court was delivered by GAULKIN, J.A.D.
Bingham and Zislin, captains in the Passaic Police Department, took a Civil Service promotional examination on December 10, 1960 for the post of deputy police chief. On March 1, 1961 they were advised that Bingham had finished first and Zislin second. Zislin, however, is a disabled veteran. On July 26, 1961 Bingham's then attorneys wrote to the Department of Civil Service (Civil Service) requesting "an examination and investigation of the applications filed by various persons to take the above mentioned examination * * * Captain Bingham is in receipt of information which indicates that statements may have appeared on one of these applications which are factually incorrect." Civil Service wrote the attorneys for "definite information * * * from your client." The attorneys replied that they thought "the best way to provide the [Civil Service] Commission with such information would be * * * an interview." Civil Service thereupon asked the attorneys to produce Bingham on October 18, 1961 "at which time Captain Bingham can make a statement on this matter which will be stenographically recorded."
On that date Bingham was sworn and read a prepared statement in which he said (emphasis ours):
"I have strong reasons to believe that Captain Zislin, who had suffered two serious heart attacks prior to the last examination for Deputy Chief, and was confined to the Passaic General Hospital, and has over a total of 135 days sick leave, neglected to state these facts on his application to take the deputy chief's examination. If this is found to be true, I request the Commission to direct that a medical examination be conducted by its physician to ascertain these facts. I also believe that he failed to inform the Department of Civil Service that a special office had been set up on the first floor of the police building when he returned to duty after his illness, because he would not return to his office on the second floor.

*463 * * * * * * * *
* * * And if it is found, after an investigation, that Captain Zislin deliberately withheld or falsified any information on his original application to take the deputy chief's examination, I strongly feel he should not be certified * * *."
Civil Service made the investigation demanded by Bingham. It found (and now Bingham does not dispute) that Zislin's application had disclosed the facts about his heart attack and hospitalization. The application stated that Zislin had had a myocardial occlusion on October 7, 1958 and had been unable to return to work until February 2, 1959. It now appears to be conceded also that Zislin had not had "two serious heart attacks prior to the last examination," as Bingham had charged, but only the one on October 7, 1958. As we understand Bingham's argument, his contention now seems to be that Zislin was not physically able to perform the duties of deputy chief when Civil Service certified his eligibility, and therefore he was disqualified under R.S. 11:23-2(b).
Apparently Civil Service's investigation had satisfied it, by December 20, 1961, that there was no fraud or concealment in Zislin's application, for on that date it certified Zislin as eligible. However, mindful of Bingham's demand, the certification was "conditional, pending outcome of medical examination by Civil Service physician."
In compliance with Bingham's demand for such examination, Civil Service had Zislin examined by its Dr. Finkle. Dr. Finkle reported on January 13, 1962 that Zislin was physically fit for the post, and on February 14, 1962 Bingham was so advised by Civil Service.
On February 23 Bingham's present attorney wrote Civil Service requesting a "full hearing * * * on the issues involved" without specifying them. The attorney states that by a "full hearing" he meant a trial-type one. Civil Service denied the request, and from that refusal Bingham now appeals.

*464 I.
Civil Service argues that no applicant has standing to demand a trial-type hearing on the issue of the physical disability of another applicant. It points out that the last paragraph of said R.S. 11:23-2 provides that:
"When the commission refuses to examine an applicant or after examination to certify an eligible, it shall, upon request of such person, grant a hearing upon the cause of such refusal."
Civil Service says that "the clear implication is that the only occasion on which the commission must grant a trial-type hearing in connection with an investigation of the physical qualifications of a candidate is where both of two conditions are met: (1) the commission refuses to certify a candidate, and (2) an application for a hearing is made by that candidate. In the present case, neither of these conditions is met. The commission did not refuse to certify anyone, and no application for a hearing was made on behalf of such a person."
Civil Service expresses no opinion as to whether a rival candidate would be entitled to any other type of hearing. If the construction placed by Civil Service upon R.S. 11:23-2 is correct, it would seem to follow that a rival candidate would be entitled to no hearing whatever.
We are of the opinion that a rival candidate situated as Bingham is here does have the right to a trial-type hearing in a proper case. The quoted paragraph of R.S. 11:23-2 applies only when the Civil Service Commission refuses to examine an applicant or to certify him. Then no one but the rejected applicant may appeal. However, when the applicant is accepted over the protest of the appointing authority, the appointing authority may appeal. Vanderwart v. Department of Civil Service, 19 N.J. 341 (1955). Civil Service admits that it has entertained appeals by appointing authorities which challenged the candidate's physical fitness. *465 Why, then, should a rival candidate, who has passed the examination and is eligible for appointment, not have the right to present to the Civil Service Commission evidence of a violation of R.S. 11:23-2(b) which would disqualify his competitor? We hold he does have that right. 3 Davis, Administrative Law § 22.11 (1958). And, if he has that right, why should he not, in a proper case, be given a trial-type hearing to prove his charges?
The interdiction against the appointment of one physically unfit is one of six such commandments contained in R.S. 11:23-2. In Vanderwart v. Department of Civil Service, supra, the Supreme Court said:
"While literally the language of this section is permissive, it must be given a mandatory construction to eliminate from all examinations and from all lists persons who fall within the six proscribed categories set forth in the statute. If this were not so, then both the constitutional directive to appoint according to merit and fitness and the statutory requirements herein quoted could be overlooked with impunity * * *." (19 N.J., at p. 350)
The philosophy which underlies this utterance would seem to indicate that, wherever and whenever feasible, a trial-type hearing should be afforded in all proper cases to those who have the standing to assert and who seek to prove that a proposed appointment violates R.S. 11:23-2. Cf. Jersey City v. Department of Civil Service, 57 N.J. Super. 13, 49-51 (App. Div. 1959).
There is nothing about the issue of physical fitness which takes it out of the general rule. That issue is frequently tried in the courts, with and without juries, and, as we have said, is tried before Civil Service when raised by the applicant or the appointing authority. Therefore, it is an issue which Civil Service is equipped and accustomed to decide in a trial-type hearing.
In short, we hold that in a proper case a competing applicant is entitled to a trial-type hearing to determine the physical fitness of another applicant.

*466 II.
The question, then, is whether this was a case in which Civil Service erred in refusing Bingham a trial-type hearing.
Bingham concedes that Dr. Finkle is competent and unbiased. When asked at oral argument what he proposed to prove at such a hearing if one had been granted, Bingham's attorney admitted frankly that he had no evidence to offer, and would have depended solely upon his cross-examination of Dr. Finkle, Zislin, or any other witnesses Civil Service or Zislin might call, and upon whatever he might find in the records of the police department and of the hospital in which Zislin was confined as a result of his heart attack. He admitted that he had never seen or requested these records, and that he knew of nothing damaging to Zislin therein.
In short, it appears that Bingham did, as respondents say, seek only the opportunity to engage in a "fishing expedition." To put it more kindly, one might say that Bingham demanded that Civil Service prove to him at a trial-type hearing that its decision was correct.
But the burden is not upon Civil Service to prove it was correct, but upon Bingham to prove it was wrong. Had a hearing been granted, there would have been no obligation upon Civil Service or Zislin to produce witnesses, and, had they produced none there would have been no one for Bingham to cross-examine. In that case a hearing would have been an empty gesture, for no testimony would have been taken.
Civil Service having made the investigation and the physical examination demanded by Bingham, was Bingham entitled to a trial-type hearing simply because he was dissatisfied with the result? We think not.
No competitor or third party is entitled, upon his naked demand, to have proved to him at a trial-type hearing the qualification of another applicant. When the qualification of an applicant is challenged by another, Civil Service *467 may demand particulars of the challenge from the challenger. Cf. R.S. 11:25-1. This is an obvious necessity. For example, in the case at bar Bingham's first request was that all of the applications for the examination be examined and investigated because he suspected that one of them contained falsehoods. Civil Service was obviously entitled to ask, as it did, whose applications and what falsehoods? Had Bingham given no further particulars, Civil Service plainly would have been under no duty to investigate or to give Bingham a hearing, trial-type or other.
When Bingham did give the particulars, quoted above, he did not assert them as matters of fact and ask for a trial-type hearing at which to prove them. Instead, he stated them as suspicions  "strong reasons to believe"  and asked Civil Service to investigate, to determine whether his suspicions were well founded. At that point Civil Service, without any investigation, could have turned the matter into an adversary proceeding, set it down for a trial-type hearing and called upon Bingham to prove his charges. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 559 (1955). Instead, Civil Service made the investigation requested by Bingham. In short, Bingham was given the hearing he requested at that time. Had Bingham then asked for a trial-type hearing to prove his charges, Civil Service might have given him one instead of undertaking the time, trouble and expense of the investigation. Cf. Rainier's Dairies v. Raritan Valley Farms, Inc., supra, at p. 556.
When the investigation which Bingham demanded was completed, he announced his dissatisfaction with the result and for the first time demanded a trial-type hearing. He demanded a "full" hearing "on the issues involved" without stating what they were, the purpose to be served by such a hearing or what he proposed to prove. Even now he admits that, had he been asked, he would have told Civil Service that all he proposed to do was to explore the evidence gathered *468 by Civil Service which satisfied it that Zislin was physically able to perform the duties of deputy chief.
We are of the opinion that Civil Service having heard Bingham's complaints and made the investigation and examination demanded by him, he did not thereafter have the absolute right to ask for a trial-type hearing for the limited purpose of exploring the evidence. Had he contended that he expected to prove that Dr. Finkle was not competent, or biased, or that he had proof of Zislin's disability which had not been brought to the attention of Civil Service, or that the proofs upon which Civil Service had relied were false or its investigation incompetent or incomplete, or had he made some similar charge, Bingham (if not barred by laches) might have been entitled as a matter of right to a trial-type hearing to prove his contentions. But a hearing to explore the evidence gathered by Civil Service was not a matter of right but a matter for Civil Service's discretion.
In the exercise of that discretion, Civil Service had the right to take into consideration the long time that had already elapsed, the further time that would be consumed by a trial-type hearing, and the fact that the office of Deputy Chief of Passaic was one which should be filled promptly.
Bingham must have known of Zislin's heart attack and hospitalization long before December 1960, when the Civil Service examination was given. He could have protested Zislin's eligibility at that time, for the promotional examination was limited to Passaic police captains. If we assume that Bingham may not have known that Zislin intended to take the examination, Bingham did know on March 1, 1961, when the results were published, that Zislin had taken it and passed second, yet Bingham made no complaint until July 26, 1961, and furnished no particulars until October 18, 1961. Even then he did not ask for a trial-type hearing or for an opportunity to produce evidence but instead he requested an investigation and an examination by Civil Service. The investigation and an examination by Civil Service took until January, 1962. The demand for the hearing was *469 not made until February 1962  over a year after the examination, and almost a year after the results had been announced.
Under all of the circumstances, we find Civil Service properly exercised its discretion in denying Bingham a trial-type hearing.
Affirmed.